UNITED LIFE AND ACCIDENT
INSURANCE CO.

v.

UNITED STATES of America.

Civ. A. Nos. 3007, 3236.

United States District Court,
D. New Hampshire.

July 20, 1971.

Robert H. Reno, Orr & Reno, Concord, N. H., for plaintiff.

David A. Brock, U. S. Atty., Concord, N. H., Herbert Grossman, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

BOWNES, District Judge.

These are consolidated actions by United Life and Accident Insurance Company (hereinafter United Life) against the United States for a refund of taxes allegedly erroneously and illegally assessed and collected. United Life's principal place of business is in Concord, New Hampshire. Jurisdiction and venue are based on 28 U.S.C. § 1346(a) (1) and 28 U.S.C. § 1402(a) (2). The case was tried without a jury. Although the claims for refund originally involved a number of different deductions or exclusions, all but two claims have been resolved by agreement of the parties. Both of the refund claims before the court involve the interpretation of specific sections of the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820 (1964) (hereinafter the Act).

The first claim of the taxpayer involves the proper accounting treatment of deferred and uncollected premiums for purposes of computation of the tax on gains from operations, commonly called the Phase II tax. The resolution of this issue depends on interpretation of various subsections of 26 U.S.C. § 809. The second claim of the taxpayer involves the proper treatment of lapsed policies during the year of an election to revalue reserves from a preliminary term basis to a net level premium basis. This issue requires interpretation of 26 U.S.C. §§ 818(c) & 810(b). Each of these claims will be treated separately.

The parties have stipulated or agreed to the preliminary facts. The only years in question are 1961 through 1965, inclusive. Throughout this period, United Life was a life insurance company within the meaning of Section 801(a) of the Act, 26 U.S.C. § 801(a) (1964). United Life's income tax returns and accounting procedures are based on a calendar year basis (year-end December 31). All income tax returns and claims for refunds

during the years in question were duly and timely filed. In each of the years in question, United Life's annual statements were prepared pursuant to a uniform annual statement form (generally referred to as "convention blanks") promulgated by the National Association of Insurance Commissioners (hereinafter N.A.I.C.), a national organization composed of state officials in charge of regulating insurance companies.

## I. DEFERRED AND UNCOLLECTED PREMIUMS

The resolution of the proper tax treatment of deferred and uncollected premiums requires a detailed analysis of the financial practices of life insurance companies and of the Life Insurance Tax Act.

## FINDINGS OF FACT

The parties agree to essentially all of the facts related to deferred and uncollected premiums except their tax treatment. A number of definitions are required for a full understanding of this issue.

1. *Gross Premium*

The premium paid by a holder of a life insurance policy is termed the gross premium or the contract premium. This premium is set by the insurance company to meet the expected benefits payable during the life of the policy, the expected expenses associated with the policy, and in the case of some life insurance companies, an allowance for profit. In arriving at a gross premium, the insurance company attempts to estimate all future expenses and benefits required to service the policy. The total amount required over the life of the policy to meet expected benefits and expenses is termed the net single premium. Since policyholders generally do not purchase life insurance by paying the net single premium all at once, it is converted to premiums which are paid annually or more frequently.

2. *Net Valuation Premium*

The gross premium is comprised of two parts. One is the net premium or

net valuation premium. This is the portion of the gross premium which must, because of N.A.I.C. regulations, be treated as a liability and added to reserves on the balance sheet to cover expected benefits payable to the policyholder. The net valuation premium is the estimated amount required to cover the benefits payable under the policy. The net valuation premiums on a block of policies are credited to reserves and earn an assumed rate of interest and are decreased by an assumed payout of death benefits. Ideally, the net valuation premiums paid during the life of the policies, increased by assumed interest earned and decreased by assumed payout of death benefits, should exactly cover the benefits that will be required at the maturity of the policies. The net valuation premium is for all intents and purposes set by the state life insurance commissioner, since the insurance commissioner sets the maximum interest rate to be applied and specifies the actuarial table which must be used.

### 3. *Loading*

The other portion of the gross premium is termed "loading," and it is the tax treatment of the loading portion of the gross premium that is one of the important issues in this case. The loading portion of the gross premium is the excess over the amount needed to cover the benefits of the policy as reflected by the net valuation premium. The loading portion of the premium is set by the company to cover estimated expenses incurred by the company in obtaining and maintaining the policy. Loading, therefore, would include the agent's commission, collection expenses, and other general expenses allocable to the policy. The loading portion of the gross premium may also include an amount over and above the expenses which constitutes profit for a life insurance company with stockholders, or, in the case of a nonstock insurance company, an excess over expenses to be distributed as dividends to policyholders.

While annualizing the gross premium is accepted and standard insurance practice, it creates a built-in unbalance of the relation of revenues and expenses. In the early years of the policy, the risk of death of the policyholder is less than the risk in the latter years of the policy. Consequently, the government reasons that the policyholder is "overcharged" in the early years of the policy and "undercharged" in the latter years of the policy. One may, however, view the annualized premium as equalizing the risk rather than as "overcharging" and "undercharging."

A further unbalance results because the expenses associated with the policy are highest in its initial years. This follows from the fact that the largest portion of expenses attributable to a policy are the agent's commission and other expenses associated with the acquisition of the policy. This unbalance may be rectified by accounting practices permitted by N.A.I.C. regulations. An insurance company may treat the gross premium on a net level premium basis. In other words, if the gross premium is $100, the insurance company is allowed to allocate $80 as the net valuation portion to be credited to reserves and $20 to loading for each and every year of the policy. A company may instead elect to offset the higher expenses in the early years of the policy by applying the entire $100 to expenses. This procedure is called the full preliminary term method. A number of modified preliminary term methods are also allowed whereby the loading portion of gross premium is high and the net valuation portion allocated to reserves is low during the initial years of the policy. Each year thereafter, the loading portion is decreased and the net valuation portion allocated to reserves is increased. United Life used a modified preliminary term method during the years in question.

### 4. *Deferred and Uncollected Premiums*

At issue here is the proper tax treatment of deferred and uncollected premiums. Deferred premiums arise because of the different premium payment plans available to policyholders. If the premium is paid in one annual installment on

its anniversary date, no deferred premium arises. If, however, the premium is paid semi-annually, quarterly, or monthly, a deferred premium may arise. Assuming, for example, that a policy has a gross premium of $100, an anniversary date of September 1, 1971, and is paid semi-annually, one payment would be made on September 1, 1971, and the second on March 1, 1972. Consequently, as of December 31, 1971, the close of the taxable year of United Life, one $50 premium would have been paid (September 1, 1971) and there would be one deferred premium of $50 outstanding on the policy.[1] If the policy premiums were paid quarterly, the September 1, 1971, and December 1, 1971, premiums of $25 would each be paid and the March 1, 1972, and June 1, 1972, premiums of $25 each would be deferred premiums.

An uncollected premium is one which has become due but has not been paid. Since all states have a thirty day grace period, a policy does not automatically lapse when a premium is not paid. If, therefore, a premium of $100 due on December 15, 1971, had not been paid by December 31, 1971, the $100 premium is termed an uncollected premium. For a variety of reasons, for example policies with automatic premium loan provisions, a policy may not lapse although a premium is uncollected for several months.

█ One important aspect of deferred and uncollected premiums is that an insurance company has absolutely no legal right to collect them. A life insurance policyholder may terminate the payment of premiums at any time without incurring any legal obligation to pay them. This is unlike the normal business transaction where the supplier of goods or services has a legal right to collect payments. Dr. Zeldin, the expert witness for the government, testified, however, that 85% of these deferred and uncollected premiums are collected during the initial two or three years of a policy and, thereafter 95% are collected. This testimony was neither contradicted nor challenged.

Since the technical question here is the tax treatment of the increase in loading on deferred and uncollected premiums, that term must be clarified. The loading portion of deferred and uncollected premiums for the end of the taxable year is compared to the loading portion of deferred and uncollected premiums at the close of the previous year. If the amount of loading at the end of the taxable year exceeds the amount of loading at the end of the previous year, this excess is termed an increase in loading on deferred and uncollected premiums. If, on the other hand, the amount of the loading at the end of the taxable year is less than the amount of loading at the end of the prior year, a decrease in loading results. As will become apparent, the only manner in which the treatment of loading can be clearly explained is to disregard these technical terms and examine the underlying items involved.

### 5. Reserves

Another important aspect of the financial practices of a life insurance company involved in this issue is the treatment of reserves. Greatly simplified, an insurance company's reserves are the amounts treated as a liability on the balance sheet which the company estimates will be sufficient to meet its policy obligations. The reserve account on the balance sheet is built up over a period of years and is the aggregate of the net valuation premium payments and assumed interest thereon less the assumed payout of death benefits to policyholders based on actuarial tables. The only portion of a gross premium added to reserves is the net valuation premium since the

---

1. These figures assume that the premium on a given policy is the same regardless of the method of payment. In actual practice, a premium paid semi-annually, quarterly, or monthly generally exceeds one annual premium because the company must offset the increased costs of collec-

tion and the interest lost because the company does not have the use of the money for an entire year. The increase in the premium depending on the mode of payment is not relevant to the issues in this case and is disregarded throughout.

reserves do not include provisions for expenses or profits.

The computation of reserves is based on certain assumptions. Most life insurance companies, including United Life, assume in their computation of reserves that premiums are paid annually at the beginning of each policy year; that interest is earned at a certain percentage rate; and that deaths will occur accord-. ing to a certain mortality table. The first assumption—that premiums are paid annually on the policy anniversary date—is an important factor in this case as will become apparent later in the opinion.

### 6. United Life's Treatment of Deferred and Uncollected Premiums

With this general explanation of gross premiums, net valuation premiums, loading, deferred and uncollected premiums and reserves as a background, United Life's accounting procedure and tax treatment of deferred and uncollected premiums may be analyzed. The plaintiff's accounting treatment of deferred and uncollected premiums complied with the rules established by the N.A.I.C. The summary of operations statement on page 4 of the "convention blank" (Pl. Ex. 1–11) contains the N.A.I.C. rules for the determination of gain or loss from operations and the accounting treatment for deferred and uncollected premiums which United Life followed. As required by the N.A.I.C., United Life included the net increase of deferred and uncollected premiums as income on a gross basis on line 1.1 of the convention blank. The net valuation portion of the increase in gross deferred and uncollected premiums is deductible and is accounted for on line 17 of the convention blank as increases in aggregate reserves. The increase in loading on deferred and uncollected premiums is excluded by line 25.[2] The net result of this procedure is that no gain or loss results from the recognition of deferred and uncollected premiums.

An easier explanation of the treatment of deferred and uncollected premiums results if they are accounted for on a yearly basis instead of an incremental basis from year to year. This is the procedure I adopt in resolving this issue and I leave the technical accounting aspects aside. In any given year, the treatment of deferred and uncollected premiums may be illustrated as follows: Assume gross deferred and uncollected premiums at year-end in 1965 are $800,000, that the net valuation portion of these premiums is $600,000 and that the loading portion is $200,000. The insurance company would report the $800,000 in gross amount of premiums. The $600,000 is deducted as an increase in reserves and the $200,000 loading is deducted. The net result is, of course, no gain or loss attributable to deferred and uncollected premiums. Viewed in

2. This somewhat complex approach results from the accounting treatment of deferred and uncollected premiums. To illustrate the procedure followed by United Life, assume that gross deferred and uncollected premiums in 1964 were $800,000 and in 1965, they were $1,000,000. Assume further that 20% of these are allocated to loading and 80% to reserves. For the taxable year, the company includes on page 4, line 1.1 of the convention blank, the net increase in deferred and uncollected premiums—$200,000 ($1,000,000 minus $800,000). Examination of page 7 of the convention blank, where the computation of total premiums appears, indicates that the deferred and uncollected premiums from the prior year are deducted in the computation of premiums in the current year so that deferred and uncollected premiums are stated on a net increase or decrease basis. On line 17, United Life includes that portion of the net increase in deferred and uncollected premiums attributable to reserves—$160,000 (80% of $200,000). On line 25, the increase in loading is deducted—$40,000 (20% of $200,000). Note that loading on the $800,000 deferred and uncollected premiums in 1964 was $160,000 (20% of $800,000) and that loading on the $1,000,000 deferred and uncollected premiums in 1965 was $200,000 (20% of $1,000,000). Thus the increase in loading of $40,000 ($200,000 minus $160,000) compares with the 20% of $200,000. This illustration assumes, of course, that the percentage allocated to net valuation premium and to loading remain constant.

this manner, the complexities of the accounting methods involved are minimized and attention is focused on loading and the phraseology "increase in loading" or "decrease in loading" become unimportant.

United Life takes two alternative positions on the proper tax treatment of deferred and uncollected premiums. The first is that gross deferred and uncollected premiums should be excluded completely from the computation of the Phase II tax. The second is that if deferred and uncollected premiums must be reported as income, then the procedure specified in the convention blank must apply and a deduction should be allowed for the increase in loading on deferred and uncollected premiums [3] since this comports with its method of accounting and clearly reflects income and expenses.

The government argues that United Life was required to include gross deferred and uncollected premiums in income for determining the tax on gain from operations but concedes that a deduction for the net valuation portion of deferred and uncollected premiums was proper. The government contends, however, that despite the fact that N.A.I.C. rules allow it, United Life is not entitled to a deduction for the increase in loading on deferred and uncollected premiums in the determination of the gain or loss from operations for tax purposes. It also argues alternatively that gross deferred and uncollected premiums should be completely excluded from both the Phase I and Phase II tax computation.

### RULINGS

Before resolving the issue of the tax treatment of deferred and uncollected premiums, a very brief explanation of the scheme of taxation of insurance companies is required. The Life Insurance Tax Act establishes a three phase procedure for the taxation of life insurance companies. The Phase II tax is directly at issue here, but an explanation of the Phase I tax is necessary to understand the Phase II tax. A discussion of the Phase III tax concerning policyholder surplus is neither germane nor necessary.

The Phase I tax requires the computation of investment yield. Under this phase, the company determines investment yield in dollars by reducing gross investment income as defined by section 804(b) [4] by investment expenses specified in section 804(c). This investment yield is then pro-rated between the company and the policyholders depending on the level of reserves. The company is taxed only on its share of investment yield. See section 804(a). United Life's tax returns between 1960 and 1965 (Pl. Ex. 12) disclose that the policyholders' share of investment yield ranged from 64% to 75% while the company's share ranged from 25% to 36%. Over the period, therefore, 64% to 75% of United Life's investment yield was shielded from tax because it was allocated to policyholders.

The Phase II tax is concerned with gain or loss from operations and is covered by section 809. Greatly simplified to include only items involved here, the gain from operations equals the sum of the company's share of investment yield, plus gross premiums minus certain deductions specified in section 809(d). The company is taxed in accordance with section 802(b) on its share of investment yield or, if smaller, the gain from operations. In addition, if the gain from operations exceeds investment yield, then a tax is also imposed on 50% of this excess. United Life takes the position that the Phase I tax is not relevant in deciding the tax treatment of deferred and uncollected premiums for Phase II purposes. I am of the opinion that the Phase I and Phase II tax are so interrelated that one cannot be meaningfully

3. The proper phrase is actually increase in loading and cost of collection in excess of loading. This item will simply be referred to as the increase in loading, but this opinion applies to cost of collection in excess of loading to the same extent as to loading.

4. All references to sections are to 26 U.S.C. unless otherwise noted.

interpreted without consideration of the other.

United Life's first contention is that deferred and uncollected premiums should have no effect on Phase II taxable income because United Life has no right to collect deferred and uncollected premiums and, therefore, they should not be included in "gross amount of premiums" under section 809(c) (1).[5] Section 809(c) (1) does not specifically include deferred and uncollected premiums within its terms, but the government relies on Treasury Regulation (hereinafter regulation) [6] § 1.809–4(a) (1) (i) which specifically states that the gross amount of premiums "includes advance premiums, premiums deferred and uncollected and premiums due and unpaid * *."

■ This issue has been decided favorably to the government in three circuits. Western Nat'l. Life Ins. Co. v. Commissioner of Internal Revenue, 432 F.2d 298 (5th Cir. 1970); Jefferson Std. Life Ins. Co. v. United States, 408 F.2d 842 (4th Cir. 1969); Franklin Life Ins. Co. v. United States, 399 F.2d 757 (7th Cir. 1968). United Life's position has been upheld by the tax court. Western and Southern Life Ins. Co. v. Commissioner, 55 T.C. No. 96 (March 23, 1971). I hold that the gross amount of deferred and uncollected premiums should be reported under section 809(c) (1) in determining gain from operations.

■ There are three reasons for so holding. The first is that regulation § 1.809–4(a) (1) (i) specifically includes deferred and uncollected premiums in the gross amount of premiums. The fact that section 809(c) (1) does not refer to deferred and uncollected premiums does not mean, as United Life contends, that the regulation is invalid. Section 809(c) (1) uses the term "gross amount of premiums" and parenthetically includes

certain items. The maxim *inclusio unius, exclusio alterius* is not viable in tax law. The clear intent of the Act is to impose a tax on all premiums accruing within the year.

The second reason for inclusion is that United Life accrues, or in tax language, recognizes the net valuation portion of deferred and uncollected premiums in computing reserves. This results from United Life's accounting method whereby the computation of reserves is made on the assumption that the entire premium is paid on the anniversary date of the policy. This has two tax consequences. First, the pro-ration of investment yield under the Phase I tax is based on reserves, and the higher the reserves, the less investment yield is taxable. By including reserves on deferred and uncollected premiums, United Life lessens its share of investment yield and consequently its Phase I tax. Secondly, under section 809(d) (2), the company is allowed a deduction for increases in reserves for purposes of the Phase II tax. The inclusion of the reserves attributable to deferred and uncollected premiums results in a higher year-end reserve and, consequently, a larger deduction under 809(d) (2). United Life contends that the fact that it paid no Phase I tax in the years in question negates the importance of the fact that it accrues and recognizes the net valuation portion of deferred and uncollected premiums for Phase I purposes. This is not persuasive. The accrual method of accounting requires consistency. If any portion of deferred and uncollected premiums is recognized for tax purposes, the entire amount should be accrued and recognized. The taxpayer cannot pick and choose which portion is to be accrued to obtain beneficial tax treatment.

Thirdly, the N.A.I.C. accounting procedures require the inclusion of deferred

5. Section 809(c) (1) provides in part:
(1) Premiums.—The gross amount of premiums and other consideration (including advance premiums, deposits, fees, assessments, and consideration in respect of assuming liabilities under contracts not issued by the taxpayer) on insurance and annuity contracts (including con-

tracts supplementary thereto); less return premiums, and premiums and other consideration arising out of reinsurance ceded.

6. All references to Treasury Regulations are to United States Code Congressional & Administrative News, 1 Federal Tax Regulations (1970).

and uncollected premiums for the summary of operations statement. On a strict accrual basis, one could argue that since the company has no legal right to collect deferred and uncollected premiums, they should not be included in tax returns or financial statements for any purpose. The N.A.I.C. has rejected this approach as does the Life Insurance Tax Act. As noted previously, the uncontroverted testimony of the government's expert was that 85% to 95% of deferred and uncollected premiums are ultimately paid. The accrual and recognition of these premiums, therefore, clearly reflect the financial status of the company.

United Life's second contention is that if deferred and uncollected premiums must be included in income, then a deduction must also be allowed for all or part of the increase in loading on deferred and uncollected premiums. *Franklin Life* and *Jefferson Standard, supra,* both summarily reject the argument that a deduction should be allowed for increases in loading. The rejection is based on the fact that the deductions set forth in section 809(d) do not include a specific deduction for increases in loading.[7] In short, these circuits hold that *inclusio unius, exclusio alterius* while found not applicable to section 809(c)(1) is found to be controlling for purposes of 809(d). I am of the opinion that further analysis of the issue of a deduction for an increase in loading is required.

It is important here to keep in mind that the technical accounting aspects of deferred and uncollected premiums have been removed for clarity. I have held that the gross amount of deferred and uncollected premiums at the end of a given taxable year must be included in the gross amount of premiums for that year. The issue now before me is whether the loading portion of these premiums is deductible.

Section 809(d) provides in part:

(d) Deductions.—For purposes * * [of determining gain or loss from operations] there shall be allowed the following deductions:

(12) Other deductions.—Subject to the modifications provided by subsection (e), all other deductions allowed under this subtitle for purposes of computing taxable income to the extent not allowed as deductions in computing investment yield.

None of the modifications in section 809 (e) are applicable to loading and loading is not allowed as a deduction for determining investment yield. Consequently, it must be determined whether some other section of the Internal Revenue Code permits a deduction for loading. Section 162(a) states:

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

The question, therefore, becomes whether all or a part of the loading is an ordinary and necessary expense incurred in the taxable year.

Undoubtedly, that portion of loading which represents the acquisition costs, costs of collection and other expense items is an ordinary and necessary expense. That portion of loading, if any, which represents profit, unrealized interest, and unrealized deductions for death benefits are not expenses and are

---

7. In Franklin Life Ins. Co. v. United States, the court stated:

Congress has provided twelve specific deductions in Section 809 but makes no provision for an offset or deduction for "increase in loading." And, the burden is on the taxpayer to show the express statutory authority for a deduction claimed. 399 F.2d at 760.

In Jefferson Std. Life Ins. Co. v. United States, the court stated:

Section 809(c) does permit certain adjustments to gross premiums, but, significantly, it provides for no adjustment for loading. Certainly, § 809(d) provides no deduction therefor. 408 F.2d at 856.

Western Nat'l. Life Ins. Co. v. Commissioner, *supra,* does not specifically consider the issue of a deduction for increases in loading.

not deductible. The pivotal issue is whether or not the expense portion of loading is "incurred" during the taxable year. I recognize, of course, that some of the expenses associated with deferred and uncollected premiums are paid during the year and are obviously deductible. The government contends that the expense portion of loading which is estimated and not currently payable is not incurred and no deduction should be allowed. This position is taken despite the testimony of the government's knowledgeable expert that the recognition of gross deferred and uncollected premiums without recognition of the expenses associated with them distorts income. Plaintiff's Exhibit 13, which is set forth in the margin, clearly illustrates the distortion.[8]

8. This is a reproduction of Pl. Ex. 13. It involves three policies. The figures assume a number of factors which the government's expert agreed would not affect the relationship of the results.

Policy A [Paid Annually] Feb. 1

| | |
|---|---|
| Gross Premium | $100.00 |
| Net Valuation Premium | 80.00 |
| Loading | 20.00 |

Policy B [Paid Quarterly] Apr. 1, July 1, Oct. 1, Jan. 1

| | |
|---|---|
| Gross Premium [Quarterly] | $ 25.00 |
| Net Valuation Premium [Quarterly] | 20.00 |
| Loading [Quarterly] | 5.00 |

Policy C [Paid Annually] Dec.. 15

| | |
|---|---|
| Gross Premium | $100.00 |
| Net Valuation Premium | 80.00 |
| Loading | 20.00 |

[For the purposes of each example reproduced below, it is assumed that as of the close of the taxable year on December 31: the premium on Policy A is fully paid; 3 quarterly premiums ($75) have been paid on Policy B and the January 1 quarterly premium is, of course, a deferred premium; the premium on Policy C due December 15 is uncollected. It is also assumed that commissions and expenses are $18 per year per policy. The examples below illustrate the accounting procedure and income effect of the government's alternative method, the N.A.I.C. method which United Life seeks to utilize, and the government's proposed method.]

### I.

[United Life's primary method and the government's alternative method (not including treatment of reserves in Phase I tax) whereby all deferred and uncollected premiums are excluded.]

Income

Premium

| | | |
|---|---|---|
| Pol. A | $100.00 | |
| " B | 75.00 | |
| " C | —0— | $175.00 |

Expense

Reserves

| | | |
|---|---|---|
| Pol. A | $80.00 | |
| " B | 60.00 | |
| " C | —0— | $140.00 |

Commissions and Other Expenses

| | | | |
|---|---|---|---|
| Pol. A | $18.00 | | |
| " B | 13.50 | | |
| " C | —0— | 31.50 | 171.50 |

| | |
|---|---|
| Net Profit | $3.50 |

### II.

[N.A.I.C. method and United Life's alternative method.]

Income

Premium

| | | |
|---|---|---|
| Pol. A | $100.00 | |
| " B | 100.00 | |
| " C | 100.00 | $300.00 |

Expenses

Reserves

| | | |
|---|---|---|
| Pol. A | $80.00 | |
| " B | 80.00 | |
| " C | 80.00 | $240.00 |

Commissions, Etc.

| | | | |
|---|---|---|---|
| Pol. A | $18.00 | | |
| " B | 13.50 | | |
| " C | —0— | 31.50 | |

Increase in Loading

| | | | |
|---|---|---|---|
| Pol. A | —0— | | |
| " B | $ 5.00 | | |
| " C | 20.00 | 25.00 | 296.50 |

| | |
|---|---|
| Net | $3.50 |

### III.

[Government's primary method—no deduction for loading.]

Income

Premium

| | | |
|---|---|---|
| Pol. A | $100.00 | |
| " B | 100.00 | |
| " C | 100.00 | $300.00 |

Expenses

Reserves

| | | |
|---|---|---|
| Pol. A | $80.00 | |
| " B | 80.00 | |
| " C | 80.00 | $240.00 |

Commissions, Etc.

| | | | |
|---|---|---|---|
| Pol. A | $18.00 | | |
| " B | 13.50 | | |
| " C | —0— | 31.50 | 271.50 |

| | |
|---|---|
| Net | $28.50 |

[Result if expense deduction allowed as per government witness.]
[18 x 3 = 54]     Net = $6.00

I hold that United Life, under section 162 as applied to life insurance companies by section 809(d) (12) is entitled to deduct that portion of loading on deferred and uncollected premiums representing expenses which have not been deducted as paid or incurred in any prior year or in the year in question.[9]

This holding is based on a number of factors. Section 818 requires that all computations be made by an accrual method of accounting. Accrual accounting attempts to realistically match sources of revenue and items of expenses. The gross premium consists of two parts: (1) the net valuation premium—the company's estimate of the yearly amount required to meet policy benefits; and (2) loading—the estimated amount required to cover expenses relating to the policy. Since, for tax purposes, United Life must accrue and recognize the full amount of gross deferred and uncollected premiums, it must of necessity be allowed a deduction for the expense portion of the deferred and uncollected premiums, i. e., the expense portion of loading.

The government contends that the expense may never arise since the company has no right to collect the deferred and uncollected premiums and, therefore, no deduction should be allowed. This theory overlooks one inescapable fact. The government contends, and three Circuit Courts of Appeals and I agree, that deferred and uncollected premiums must be reported as income under the Act even though the company has absolutely no right to collect them. Once it is assumed that deferred and uncollected premiums have accrued, then the expense portion of those premiums has also of necessity accrued. If collection is assumed for income purposes, then it should be assumed for expense purposes. Consistency requires that the same assumption that is applied to income from deferred and uncollected premiums be applied to the expenses associated with those premiums.

The fact that these expenses are estimated and not currently payable is not relevant. As stated in Brown v. Helvering, 291 U.S. 193, 200, 54 S.Ct. 356, 359, 78 L.Ed. 725 (1934):

> Where a liability has "accrued during the taxable year," it may be treated as an expense incurred; and hence as the basis for a deduction, although payment is not presently due, and although the amount of the liability has not been definitely ascertained. [Citations omitted.]

Accrual accounting requires that the expense portion of loading on deferred and uncollected premiums be accrued. Once accrued, it is incurred and deductible.

A second reason for the allowance of a deduction is that the N.A.I.C. accounting procedure permits a deduction for the increase in loading, albeit the entire increase. Section 818 makes reference to both accrual and N.A.I.C. methods of computation. Allowing a deduction for the expense portion of loading is not only consistent with accrual accounting, but with N.A.I.C. procedure.

The final and most compelling reason is that this deduction will result in a clear reflection of income. An accrual method may comport with generally accepted accounting principles, but at the same time not clearly reflect income. The government's insurance accounting expert testified that to clearly reflect income, an expense deduction should be allowed. The gross deferred and uncollected premium is made up of two parts —net valuation premium and loading. If the deferred and uncollected premium is accrued and recognized, though not received and not legally enforceable, the expense portion of that premium should

9. This holding is not to be construed as permitting United Life a double deduction. The court recognizes that some part of the expense portion of loading may have been deducted in a prior tax year or in the taxable year in question in accordance with the Life Insurance Tax Act. United Life is, of course, not entitled to deduct any expenses previously deducted.

also be deducted. I hold that the expense portion of loading on deferred and uncollected premiums is an ordinary and necessary expense accrued and incurred in the taxable year when those deferred and uncollected premiums are recognized.

Holding that gross deferred and uncollected premiums must be included in the gross amount of premiums necessarily precludes consideration of the government's alternative theory that gross deferred and uncollected premiums should be excluded completely from the determination of tax liability in both Phase I and Phase II.

The government alternatively contends that if a deduction is allowed for an increase in the expense portion of loading, then an addition to income must be made for a decrease in loading. By casting aside the technical accounting procedures of gross deferred and uncollected premiums which give rise to the "increases in loading" and "decreases in loading," the lack of merit in the government's position is apparent. The fact that the total amount of loading decreases or increases from one year to the next is not critical, it is the underlying relationship of loading and deferred and uncollected premiums which is critical. In short, the increase or decrease in loading may result from factors totally unrelated to what loading expense deduction United Life is allowed. Two examples which come to mind are a decrease in deferred and uncollected premiums and a decrease in the percentage allocated to loading. In short, on a yearly basis, if there were deferred and uncollected premiums outstanding at the end of the taxable years in question, a deduction for the expense portion of loading not previously deducted, assuming there is such loading, would always arise whether there was an "increase in loading" or a "decrease in loading."

This does not mean, of course, that United Life is not required to make adjustments to income as a result of a deduction for the expense portion of loading. United Life must, of course, add to income any expense portion of loading accrued and deducted but which was not ultimately paid:

## II.  REVALUATION OF RESERVES

This issue is apparently one of first impression. The issue is whether United Life, in electing to revalue its reserves from the preliminary term basis to the net level premium basis pursuant to section 818(c), must revalue, at the close of the taxable year of election, all its reserves held at the beginning of the taxable year even if the policies underlying those reserves have lapsed, terminated or automatically reached the net level premium basis during the year of election. The resolution of this issue depends primarily on determining which of allegedly conflicting regulations should apply.

## FINDINGS OF FACT

The facts involved are covered in Part I of the opinion, but should be briefly reiterated here. As noted earlier, the gross premium consists of the net valuation premium and loading. There are two methods of accounting for the net valuation and loading portion of the gross premium. One is the net level premium method and the other is the preliminary term or a modified preliminary term method. The net level premium method may be illustrated as follows: Assume that a number of policies have a gross premium of $100. Assume the net valuation portion of the gross premium is $80, and the loading portion is $20. Each and every year, the company would allocate the $80 net valuation premiums to reserves to cover the expected benefits of the policy. These $80 net valuation premiums would earn an assumed rate of interest and be reduced by assumed payout of death benefits. This block of policies has level net valuation premiums, and the reserves accumulated over the life of the policies are reserves stated on a net level premium basis since each year a level amount ($80) of each premium is credited to reserves.

Under the preliminary term, or modified preliminary term method of computing reserves, assuming the same $100 gross premium, the amount credited to reserves is less. Since the costs associated with the policy are highest in the early years of the policy, the insurance companies are allowed by the N.A.I.C. to allocate the full gross premium, or a high portion of it, to expenses and none, or very little, to reserves. In other words, under the preliminary term basis, the entire gross premium of $100 may be allocated to expenses and nothing to reserves. The same approach applies to a modified preliminary term premium basis where, for example, $80 of the gross premium is allocated to expenses and $20 to reserves. Over the life of the policy, the portion of gross premium allocated to expenses becomes smaller and the portion allocated to reserves becomes higher.

The preliminary term premium method or a modified preliminary term method obviously results in a lesser level of reserves in the early years of the policy than does a net level premium method. The net level premium basis of valuing reserves produces the strongest and highest reserves, but, at the same time, produces a drain on the company's surplus because the amount of the gross premium credited to reserves is high, thereby reducing the credit to surplus.

Since the amount of business an insurance company is permitted to write by state insurance regulatory bodies is governed to a large degree by the level of the insurance company's surplus, the net level premium basis of computing reserves may severely restrict the business growth of some insurance companies. Depending on a variety of factors, including the size and age of the insurance company, financial factors, and regulatory factors, the employment of a modified preliminary term basis of valuing reserves permits the company to write more business within the limits allowed by the state insurance regulatory bodies.

Congress recognized these factors in enacting section 818(c). That section provides in part:

(c) Life insurance reserves computed on preliminary term basis.—For purposes of this part (other than section 801), at the election of the taxpayer the amount taken into account as life insurance reserves with respect to contracts for which such reserves are computed on a preliminary term basis may be determined on either of the following bases:

(1) Exact revaluation.—As if the reserves for all such contracts had been computed on a net level premium basis (using the same mortality assumptions and interest rates for both the preliminary term basis and the net level premium basis).

\* \* \* \* \* \*

For the taxable year 1965, United Life elected to revalue its reserves utilizing the exact revaluation procedure specified in section 818(c) (1). United Life contends that only the policies on the books at the end of the taxable year, i. e., December 31, 1965, need be included in revaluing the reserves as of the beginning of the taxable year 1965 from the preliminary term basis to the net level premium basis. Consequently, United Life argues that any policies which were surrendered, lapsed, terminated, or automatically equalled (primarily by the maturity of the policy) the same level as they would have under a net level premium basis need not be included since they either no longer exist or are at parity with the net level premium basis at the close of the taxable year.[10] The government contends that the exclusion of these policies from the revaluation of reserves at the beginning of the year 1965 gives the company an inflated deduction contrary to the Life Insurance Tax Act.

10. All of the policies which United Life argues should not be included in reserves at the beginning of 1965 for revaluation purposes are hereinafter referred to simply as "lapsed policies."

## RULINGS

The resolution of this issue requires consideration of two sections of the Act—section 818 and section 810. Section 818 provides the authority for revaluation, and section 810 provides the deduction for the increase or the inclusion in income of the decrease in reserves resulting from revaluation.[11] The reason for the dispute on this issue is caused because of allegedly conflicting regulations. The issue is complicated because there are two methods of revaluing reserves, and both of these methods result in different tax treatment.

■ A company may actually "strengthen" its reserves or it may revalue them solely for tax purposes. To "strengthen" reserves, the life insurance company revalues the reserves of a block of policies from a preliminary term basis to a net level premium basis and actually draws down (debits) the surplus account to offset the increase (credit to) reserves.[12] For both tax and accounting purposes, therefore, the reserves are actually revalued. If this is done, then the provisions of section 810(d) [13] apply and the increase in reserves resulting from strengthening must be deducted in equal

11. Revaluation pursuant to section 818(c) could result in a decrease in reserves. A decrease in reserves is treated as an income item and is governed by sections 810(a) and 809(c) (2). Since, under the facts of this case, United Life had an increase in reserves, only the situation of an increase in reserves will be considered here.

---

12. The balance sheet changes resulting from strengthening may be illustrated as follows:

1. Balance Sheet before strengthening:

| Assets | Liabilities & Surplus | |
|---|---|---|
| $1,000,000 | Reserves | $500,000 |
| | Surplus | 500,000 |

2. If the strengthening from a preliminary term basis to a net level premium basis results in a $200,000 increase in reserves, the following entry is made in the general ledger.

| Debit | Credit | |
|---|---|---|
| Surplus $200,000 | Reserves | $200,000 |

3. Balance Sheet after strengthening:

| Assets | Liabilities & Surplus | |
|---|---|---|
| $1,000,000 | Reserves | $700,000 |
| | Surplus | 300,000 |

---

13. Section 810(d) (1) provides:

(d) Adjustment for change in computing reserves.—

(1) In general.—If the basis for determining any item referred to in subsection (c) [reserves] as of the close of any taxable year differs from the basis for such determination as of the close of the preceding taxable year, then so much of the difference between—

(A) the amount of the item at the close of the taxable year, computed on the new basis, and

(B) the amount of the item at the close of the taxable year computed on the old basis,

as is attributable to contracts issued before the taxable year shall be taken into account for purposes of this subpart as follows:

(i) if the amount determined under subparagraph (A) exceeds the amount determined under subparagraph (B), $\frac{1}{10}$ of such excess shall be taken into account, for each of the succeeding 10 taxable years, as a net increase to which section 809(d) (2) applies; or

(ii) if the amount determined under subparagraph (B) exceeds the amount determined under subparagraph (A), $\frac{1}{10}$ of such excess shall be taken into ac-

amounts over a period of ten years. See regulations §§ 1.810–2(c) (2), 1.810–3(e) (2), and 1.818–4(d) (1).

If the company continues to value reserves on a preliminary term basis for purposes of the N.A.I.C. statements, but elects to revalue under 818(c) solely for tax purposes, a different rule of revaluation applies and the life insurance company is allowed a complete deduction during the year of election pursuant to section 810(b).

United Life adopted the section 818 (c) (1) exact revaluation for tax purposes only, *i. e.*, it did not strengthen reserves. Consequently, the deduction for the increase in reserves is governed by section 810(b) which provides:

> (b) Adjustment for increase.—If the sum of the items described in subsection (c) [reserves] as of the close of the taxable year (reduced by the amount of investment yield not included in gain or loss from operations for the taxable year by reason of section 809(a) (1)) exceeds the sum of such items [reserves] as of the beginning of the taxable year, the excess shall be taken into account as a net increase referred to in section 809(d) (2) [which allows a deduction for the increase in reserves].

Section 810(b) permits a deduction for the amount by which the reserves at the end of the taxable year (hereinafter year-end reserves) exceed the reserves at the beginning of the taxable year (hereinafter beginning reserves). Regulation § 1.810–3(f), Example (1), illustrates the method of revaluing reserves. Both beginning and year-end reserves must be revalued from the preliminary term to the net level premium basis, and the excess of year-end reserves (stated on a net level premium basis) over beginning reserves (stated on a net level premium basis) is the amount allowed

as a deduction under section 810(b). The difference between beginning reserves computed on a preliminary term basis and beginning reserves computed on a net level premium basis is not deductible.

United Life excluded from the revaluation of reserves at the beginning of the taxable year 1965 all "lapsed policies." United Life relies on two portions of regulation § 1.818–4(d) in support of its position. Regulation § 1.818–4(d) (1) provides in part:

> (d) Reserves subject to recomputation. (1) For the first taxable year for which the election under section 818(c) and paragraph (b) of this section applies, a company making such election must revalue all its life insurance reserves held with respect to contracts for which such reserves are computed on a preliminary term basis *at the end of such taxable year* on the basis elected under section 818(c) and paragraph (b) of this section. [Emphasis added.]

United Life contends that "lapsed policies" are not a part of the reserves computed "at the end of such taxable year" because the policies are no longer in force or are equal to the net level premium method. It also relies on regulation § 1.818–4(d) (2) which provides in part:

> . (2) For any taxable year other than the first taxable year for which the election under section 818(c) and paragraph (b) of this section applies, a company making such election must revalue all its life insurance reserves held with respect to contracts for which such reserves are computed on a preliminary term basis *at the beginning or end of the taxable year* on the basis elected under section 818(c) and paragraph (b) of this section. [Emphasis added.]

count for each of the 10 succeeding taxable years, as a net decrease to which section 809(c) (2) applies.

The practical effect of this provision is to allow a deduction for (or require the inclusion in income of) the difference between year-end reserves stated on a net level premium basis over year-end reserves stated on a preliminary term basis.

United Life contends that these regulations make it clear that the revaluation of beginning reserves in the first taxable year of election is to be made by reference to reserves at year-end.

■ Although the regulations are somewhat inartfully worded, as the government concedes, I hold that United Life must revalue all reserves at the beginning of the taxable year of election, including "lapsed policies." The regulations relied on by United Life, although vague, do not support its contention. A close reading of regulation § 1.818–4(d) indicates that it is intended to cover situations where a block of policies is strengthened or sold during any taxable year of a section 818(c) election. Regulation § 1.818–4(d) (1) covers the situation where a block of policies is strengthened during the taxable year. It provides that strengthened reserves are not to be included in the revaluation of year-end reserves for purposes of a deduction under section 810(b), but are to be treated pursuant to section 810(d).[14] Regulation § 1.818–4(d) (2) sets forth the rule that policies sold after the close of the taxable year of election must be included in the revaluation of year-end reserves of the taxable year for the purposes of determining the deduction under section 810(b).[15]

Allowing United Life to exclude "lapsed policies" from the revaluation of beginning reserves has two results contrary to the intent of the Act. First, it, in essence, permits a deduction for a portion of the difference between beginning reserves computed on a preliminary term basis and beginning reserves computed on a net level premium basis, a deduction not contemplated by section 810(b) and disallowed by the terms of regulation § 1.810–3(f), Example (1). Secondly, the reserves associated with lapsed policies were on the books at the beginning of the taxable year and should be included in the revaluation of beginning reserves to accurately reflect the increase or decrease in reserves. The election under section 818(c) allows an insurance company to assume it is on a net level premium basis. If United Life had always utilized a net level premium basis, it would not receive the deduction it now claims. The beginning reserves of any year are, of course, the year-end reserves of the prior year. If the year-end reserves December 31, 1964, on a net level premium basis were $1,000,000 the beginning reserves on January 1, 1965, would also be $1,000,000. The fact that certain policies lapsed during the year 1965 would not change the fact that beginning reserves in 1965 were $1,000,000. In short, United Life's position would give it a tax benefit which is unavailable to a company which has been utilizing the net level premium method of computing reserves.

14. Regulation § 1.818–4(d) (1) provides in part:

For example, if S, a life insurance company which computes its life insurance reserves on a recognized preliminary term basis at the beginning of the taxable year 1958, *strengthens a portion of such reserves during the taxable year by actually changing to a net level premium basis in computing such reserves,* and then makes the election under section 818(c) and paragraph (b) of this section for 1958, such election shall not apply with respect to the strengthened contracts. [Emphasis added.]

15. Regulation § 1.818–4(d) (2) provides in part:

For example, if M, a life insurance company which made a valid outstanding election under section 818(c) in the manner provided in paragraph (e) of this section for the taxable year 1959, sells a block of contracts subject to such election on September 1, 1960, M would value such contracts on the basis elected under section 818(c) and paragraph (b) of this section on January 1, 1960, for purposes of determining the net decrease or increase in the sum of the items described in section 810(c) for the taxable year under section 810(a) or (b).

The foregoing regulation is also subject to an interpretation that the taxable year in question is 1960. If this is the case, the regulation requires that the policies sold in September of 1960 be included in beginning reserves as of January 1, 1960. This interpretation would clearly indicate that United Life must include "lapsed policies" in beginning reserves.

The fact that all beginning reserves, including those on "lapsed policies," must be included in the revaluation is directly supported by regulation § 1.810–2(c) (3) which provides:

(3) Effect of section 818(c) election. If a company which computes its life insurance reserves on a preliminary term basis elects to revalue such reserves on a net level premium basis under section 818(c), *the sum of such reserves at the beginning and end of all taxable years (including the first taxable year) for which the election applies shall be the sum of such reserves computed on such net level premium basis.* [Emphasis added.]

This regulation and the other factors noted convince me that the revaluation is to be on reserves as of the beginning and end of the taxable year. See also regulation § 1.810–2(d), Example (5). I hold that United Life must include all "lapsed policies" in the reserves at the beginning of the year 1965 which are to be revalued to the net level premium basis.

### ORDER

United Life and the United States are ordered to recompute the tax liability of United Life in accordance with this opinion and to submit the results to the court for entry of judgment.