**GREAT COMMONWEALTH LIFE IN-SURANCE CO., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 73–1504.**

United States Court of Appeals, Fifth Circuit.

March 18, 1974.

O. Jan Tyler, Robert K. Sands, Dallas, Tex., for plaintiff-appellant.

Scott P. Crampton, Gary R. Allen, Asst. Attys. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Lee H. Henkel, Jr., Acting Chief Counsel, IRS, Washington, D. C., Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for defendant-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In computing its taxable gain from operations for 1966, Great Commonwealth took account of only the net valuation portion of deferred and uncollected premiums. On examination of the return, the Commissioner increased the taxable income by requiring inclusion of the gross amount of those premiums and assessed a deficiency of $62,260.15 plus interest. Great Commonwealth paid the deficiency and subsequently filed this suit for a refund, which the district court denied. The company contends that it should not have been required to report the gross amount, or, at least, that it should have been allowed a deduction either for additions to a reserve for unearned premiums or for the agents' commissions attributable to the deferred and uncollected premiums. We hold that the district court was correct in requiring accrual of the gross amounts but that it should have allowed a deduction for the associated commissions.

The proper tax treatment of deferred and uncollected premiums is one of the most difficult and often litigated questions under the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820.[1] See Franklin Life Insurance Co. v. United States, 7 Cir. 1968, 399 F. 2d 757; Jefferson Standard Life Insurance Co. v. United States, 4 Cir. 1969, 408 F.2d 842; Western National Life Insurance Co. v. Commissioner of Inter-

1. All citations herein are to 26 U.S.C.

nal Revenue, 5 Cir. 1970, 432 F.2d 298; Western and Southern Life Insurance Co. v. Commissioner of Internal Revenue, 6 Cir. 1972, 460 F.2d 8; United Life and Accident Insurance Co. v. United States, D.N.H.1971, 329 F.Supp. 765; Western National Life Insurance Co., 1968, 50 T.C. 285, modified on rehearing, 1969, 51 T.C. 824, rev'd, Western National Life Insurance Co. v. Commissioner of Internal Revenue, *supra*; Western and Southern Life Insurance Co., 1971, 55 T.C. 1036, rev'd, Western and Southern Life Insurance Co. v. Commissioner of Internal Revenue, *supra*. Without duplicating the detailed explanations of the problem set out in those cases any more than is necessary, we will define the key concepts for purposes of this opinion.

### Definitions

The gross annual premium under a life insurance policy is the consideration paid by the insured for coverage for a policy year, which is a twelve-month period from the date of issuance of the policy (the "anniversary date"). The gross annual premium is composed of two elements. The net valuation portion, referred to as the net valuation premium, is the amount, computed under legally required interest and mortality assumptions, that is added to life insurance reserves for payment of policy claims. The difference between the gross annual premium and the net valuation premium is the loading, which is the portion used to pay agents' commissions, administrative costs, and other expenses of the company, and to provide the company a profit.

Although some life insurance policies provide for the payment of the gross annual premium in one lump sum on the policy anniversary date, it is not unusual for it to be paid in semi-annual, quarterly, or monthly installments over the policy year. As a result, portions of gross annual premiums may remain outstanding and not as yet received by the company at the end of the taxable year. Deferred premiums are those portions of gross annual premiums which are due to be paid after December 31 but before the next policy anniversary date. Uncollected premiums are annual or installment premiums which, as of December 31, have fallen due but have not as yet been paid. The company is required to continue its life insurance contracts in force for a 31-day grace period after a premium due date, and it customarily carries such policies for up to 60 days. The policyholders are not legally required to pay either deferred premiums or uncollected premiums. If they do not, the policies will lapse, but the company cannot compel payment.

### History of the Case

Great Commonwealth filed an annual statement for 1966 with the Texas State Board of Insurance and the appropriate authorities of the other states where it is licensed to do business, using standard forms approved by the National Association of Insurance Commissioners (N.A.I.C.). As required by state law, the company computed its reserves on the assumption that all premiums for all policies in force at the close of the year had been paid in full on the policy anniversary date. Since deferred and uncollected premiums as of December 31 had not in fact been paid, the reserves were overstated in the amount of the net valuation portion of the deferred and uncollected premiums. To offset this overstated reserve liability, the company listed an asset of equal amount. This is the standard industry practice.

In calculating its taxable income,[2] Great Commonwealth used the same accrual assumptions regarding deferred and uncollected premiums as it did for its annual statement. As a result its

---

2. In 1966, the company's gain from operations computed under § 809 was less than its taxable investment income computed under § 804, and there were no subtractions from the policyholders' surplus account under § 815. Therefore, its taxable income was computed only under § 809. *See* § 802(b).

gross premium income[3] included an amount equal to the net valuation portion of the deferred and uncollected premiums. This was exactly offset by a corresponding increase in the deduction for net increases in life insurance reserves.[4] Therefore, the accrual of the net valuation portion of the deferred and uncollected premiums had no net effect on the company's taxable income.[5]

The Commissioner required the company to accrue gross deferred and uncollected premiums rather than merely the net valuation portion, holding that, once the company had accrued a portion of those premiums for some purposes, it was bound to accrue the whole of the premiums for all purposes. This approach has been approved by all circuit courts which have considered the question, including our own. Franklin Life Insurance Co. v. United States, *supra*; Jefferson Standard Life Insurance Co. v. United States, *supra*; Western National Life Insurance Co. v. Commissioner, *supra*; Western and Southern Life Insurance Co. v. Commissioner of Internal Revenue, *supra*. This had the effect of increasing the company's gain from operations in the amount of the loading on the deferred and uncollected premiums, resulting in the increased tax liability at issue here.

### I.   Accrual of the Gross Amount

■ The company first contends that it should not have been required to accrue the gross amount of deferred and uncollected premiums, despite our apparent holding to the contrary in *Western National Life*. In distinguishing that case, the company asserts that it involved "only the question of whether gross deferred and uncollected premiums were assets under the Phase I [6] computation. The *Western National Life* case did not involve, and, therefore, this Court did not have before it, the question of whether gross deferred and uncollected premiums are includable in premium income under the Phase II [7] computation."

It is true that the only contested issue in *Western National Life* was the accrual of gross deferred and uncollected premiums for purposes of the Phase I calculation. Nevertheless, the case is strongly suggestive that gross deferred and uncollected premiums should be accrued for all tax purposes. Although not strictly bound by that suggestion, we find it persuasive and adopt it.

Western National Life was a Phase I taxpayer, in the sense that its taxable investment income was taken into account in determining its taxable income under § 802(b). By the terms of that section, the taxable investment income is taken into account only if it is less than or equal to the gain from operations. § 802(b)(1). In such a case, the company's taxable income includes the Phase I taxable investment income *and* one-half of the excess of the Phase II gain from

---

3.   § 809(c)(1).

4.   §§ 809(d)(2), 810(c)(1).

5.   It is true that the life insurance company's share of investment yield, a taxable item under § 809(b)(1)(A), was affected by inclusion of the net valuation portion of deferred and uncollected premiums in reserves. The life insurance company's share is the difference between the overall investment yield and the share set aside for policyholders. The share set aside for policyholders, in turn, varies directly with the size of the reserves. § 809(a)(2)(B). Therefore, an increase in reserves leads to an increase in the size of the share set aside for policyholders and a corresponding decrease in the insurance company's share. However, any reduction in the life insurance company's share is a washout, since the company's deduction for net increases in reserves under § 809(d)(2) is reduced by the amount of the share of investment yield set aside for policyholders. § 810(b). Therefore, the only effect on the company's taxable gain from operations came through the increases in gross premium income and net increase in reserves, which also precisely cancelled each other.

6.   The calculation of a life insurance company's taxable investment income under § 804 is often colloquially called the Phase I computation.

7.   This is the colloquial term for the calculation of a life insurance company's gain from operations under § 809.

operations over the Phase I taxable investment income. In *Western National Life*, the Commissioner chose to attack the handling of deferred and uncollected premiums only under the Phase I computation. No doubt he did so because Western National had already accrued the gross amount for the Phase II calculation. *Western National Life Insurance Co. v. Commissioner of Internal Revenue, supra,* 432 F.2d at 302. In upholding the Commissioner's approach, the court explicitly approved the reasoning of the Seventh Circuit in *Franklin Life* and the Fourth Circuit in *Jefferson Standard Life,* both of which involved the Phase II computations.

It would be highly inconsistent to require accrual of the gross deferred and uncollected premiums under Phase I but only the net under Phase II. This inconsistency would be particularly glaring in cases in which the company's gain from operations exceeds its taxable investment income, since overall taxable income in those cases includes both Phase I and Phase II elements. This would add unnecessary complexity to an already complex tax formula. Great Commonwealth offers no justification for this procedure, and we certainly perceive none. Therefore, the district court was correct in requiring the accrual of the gross deferred and uncollected premiums.

## II. Reserve for Unearned Premiums

■ Great Commonwealth next argues that, if required to accrue the gross deferred and uncollected premiums, it should be allowed to set up a reserve for unearned premiums under § 801(c)(2) in the amount of that portion of the loading attributable to life insurance coverage to be provided in the succeeding taxable year. This would generate a deduction for increases in reserves under § 809(d)(2).

There is considerable doubt, however, whether the term "unearned premiums" has any application to premiums on life insurance policies at all. It appears that the term has consistently been confined to the casualty insurance field. Alinco

Life Insurance Co. v. United States, 1967, 373 F.2d 336, 178 Ct.Cl. 813; Travelers Equitable Insurance Co., 1931, 22 B.T.A. 784. Moreover, loading is not a proper item for inclusion in an insurance reserve at all. Treasury Regulation § 1.801–3(e) defines "unearned premiums" as "those amounts which shall cover the cost of carrying the insurance risk for the period for which the premiums have been paid in advance." The loading portion of deferred and uncollected premiums for insurance coverage provided in the succeeding taxable year fails to meet this definition in two respects. First, by definition, loading covers expenses and other items *apart from* the cost of carrying the insurance risk. The net valuation premium covers the cost of carrying that risk. Second, far from being paid in advance, deferred and uncollected premiums have not been paid at all. The district court was correct in refusing to allow a deduction for additions to reserves for unearned premiums.

## III. Agents' Commissions

Finally, the company contends that, if required to accrue the gross deferred and uncollected premiums, it should at least be allowed to accrue the agents' commissions on those premiums and take corresponding deductions. The government responds that these expenses are not accruable, since the liability for them is not fixed and definite. The company will be liable to pay the commissions only if the premiums are in fact paid. As noted before, there is no assurance that they will ever be paid, although the policies will lapse if they are not.

■ There is no doubt that the government is entirely correct when it asserts that these agents' commissions are not accruable under generally accepted accounting principles. Treasury Regulation § 1.461–1(a)(2) provides that

[u]nder an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount

thereof can be determined with reasonable accuracy. . . . [N]o accrual shall be made in any case in which all of the events have not occurred which fix the liability . . . .

Accrual of deductions has consistently been denied where not all the events necessary to fix the taxpayer's liability have occurred. Brown v. Helvering, 1934, 291 U.S. 193, 54 S.Ct. 356, 78 L. Ed. 725; Trinity Construction Co. v. United States, 5 Cir. 1970, 424 F.2d 302; Commissioner of Internal Revenue v. H. B. Ives Co., 2 Cir. 1961, 297 F.2d 229; Pierce Estates v. Commissioner of Internal Revenue, 3 Cir. 1952, 195 F.2d 475. Under these authorities the commission expenses clearly are not properly accruable.

■ In our view, however, this is not the end of the question. We must not forget that we are, in Judge Drennan's colorful phrase, in the "fantasy world of life insurance company accounting and taxation." Western National Life Insurance Co., 51 T.C. 824, 830. It is no answer to say that the commissions are not properly accruable. The premiums themselves are not properly accruable, either, but the company must report them as though they were. Unavoidably, then, the company's income has already been distorted by that requirement. It would only distort that income yet further not to permit the company to accrue the commission expense deductions, which are only contingent to the same extent that receipt of the premiums themselves is contingent. The company cannot receive premiums without incurring corresponding commission liabilities. We therefore hold that the district court should have permitted the company to accrue deductions for commissions on the deferred and uncollected premiums, and we remand for a determination of those commissions.

In reaching this result we are aided by few of the authorities cited by the parties. Great Commonwealth asserts that a rule allowing the accrual of commissions in the year of accrual of the associated income is established by Ohmer Register Co. v. Commissioner of Internal Revenue, 6 Cir. 1942, 131 F.2d 682; Air-Way Electric Appliance Corp. v. Guitteau, 6 Cir. 1941, 123 F.2d 20; Central Cuba Sugar Co. v. Commissioner of Internal Revenue, 2 Cir. 1952, 198 F. 2d 214; and The Warren Co., 1942, 46 B.T.A. 897, aff'd on other grounds, 5 Cir. 1943, 135 F.2d 679. In support of its position that accrual of deductions is permissible only when the liability therefore is fixed and definite, even if the associated income is accruable in an earlier year, the United States cites American Automobile Association v. United States, 1961, 367 U.S. 687, 81 S. Ct. 1727, 6 L.Ed.2d 1109; Schlude v. Commissioner of Internal Revenue, 1963, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 603; ABKCO Industries, Inc. v. Commissioner of Internal Revenue, 3 Cir. 1973, 482 F.2d 150; and W. S. Badcock Corp., 1972, 59 T.C. 272, which is presently pending on appeal in this court. All of these cases deal with *properly* accrued income items, and the issue in them is whether the associated expenses are *properly* accruable. In this case, however, it is agreed that *neither* the premium income nor the associated commission expenses are properly accruable, in the sense that neither the right to receive nor the obligation to pay is fixed and definite. The company's cases do no more than follow the usual rule that expenses are deductible in the year in which the liability becomes fixed and definite, while the government's cases merely establish that the goal of matching income and its related expenses in the same taxable year, so as to clearly reflect income, does not override the necessity of following normal accrual rules, so long as those rules have not already been violated in the treatment of income items. The issue before us is whether to permit accrual of the commission deductions to the same extent accrual of the premium income is required, in view of the fact that both items are subject to precisely the same contingencies.

This particular issue seems to have been presented to only two courts. In Occidental Life Insurance Co. v. United States, C.D.Cal.1970, 25 Am.Fed.Tax R. 2d 796, the commission deduction was denied, but an opposite result was reached in United Life and Accident Insurance Co. v. United States, D.N.H. 1971, 329 F.Supp. 765. We think the New Hampshire district court reached the sounder result, although we disagree with its conclusion that the expenses associated with the deferred and uncollected premiums are properly accruable under generally accepted accrual accounting principles. We base our holding on the need to avoid undue distortion of income.

The Commissioner's power to require a change in the treatment of items in computing taxable income is grounded on § 446(b), which provides in part that "if the method [of accounting] used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." In the exercise of the discretion granted him, the Commissioner could reasonably feel that the company's income would not be clearly reflected by accrual of only the net valuation portion of the deferred and uncollected premiums, and he has been consistently upheld in requiring accrual of the gross amount. The statutory objective of clear reflection of income will be hindered, however, if the expenses necessarily associated with that gross premium income are not also taken into account. This does no further violence to the usual accrual rules, which would not permit accrual of either the premiums or the commissions. In fact, it tends to mitigate the distortion of income caused by the Commissioner's deviation from those rules in requiring the accrual of the gross amount of the premiums.

Not only would disallowal of commission deductions create an inconsistency in the treatment of income and its associated expenses, it would also create an inconsistency in the treatment of these deductions and the deduction for net increases in life insurance reserves under § 809(d)(2). The company's reserve liability with regard to the net valuation portion of the deferred and uncollected premiums will not in fact accrue until the premiums themselves accrue. Yet the Commissioner has not merely allowed the company to accrue this item, which generates the § 809(d)(2) deduction, he has used that very accrual as the sole basis for requiring accrual of the gross amount of the deferred and uncollected premiums. Since the Commissioner does not challenge the deduction under § 809(d)(2), we see no basis for allowing a challenge to the deduction for agents' commissions, which are no more contingent than the reserve liability.

In requiring accrual of the gross amount of the deferred and uncollected premiums, the Seventh Circuit explained the need to use consistent accrual assumptions.

> The District Court would permit the taxpayer to accrue a full year's liability without a corresponding accrual of the related year's asset in point of time. Such a result would attribute to Congress an intention that in the same statutory equations, exclusions and deductions attributable to reserves are to be based on the assumption that the annual premium is fully paid up and yet the amounts in the same equation from which these figures are to be subtracted are to be determined on the assumption that the annual premium is not fully paid up. This is, in effect, saying that Congress, when it specified accrual accounting, must have meant one rule to apply to reserve deductions and exclusions and another different accrual rule to apply to determining the amount from which the former are to be subtracted. We perceive nothing from which intent to impose such a dual standard of tax accounting can be presumed.

Franklin Life Insurance Co. v. United States, *supra*, 399 F.2d at 761. We think the same reasoning applies with equal force here. We do not think that

Congress meant for one standard to apply to reserve deductions and a different rule to apply to commission deductions.

### Conclusion

The result we reach is admittedly an imperfect one. None of the amounts under discussion are properly accruable under normal accounting practices. It would be far more accurate, we think, for the company to disregard deferred and uncollected premiums for all ˋtax purposes, with the Commissioner's approval, of course. § 446(e); Treas.Reg. § 1.446–1(e). This would create some variance in accounting between the N. A.I.C. reports and the tax returns, but it is well settled that there is no necessary agreement between the two as noted by the courts in Franklin Life, Jefferson Standard Life, and Western National Life. We hold only that, once the company accrues the net valuation portion of the deferred and uncollected premiums, it must accrue the gross amount of those premiums for all tax purposes, and that it is also entitled to accrue commissions payable on those premiums.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.