The FRANKLIN LIFE INSURANCE COMPANY, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 16580.

United States Court of Appeals Seventh Circuit.

July 11, 1968.

As Modified on Denial of Rehearing Aug. 30, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Thomas L. Stapleton, Lee A. Jackson, Meyer Rothwacks, Harry Marselli, Tax Division, U. S. Dept. of Justice, Washing-

ton, D. C., Richard E. Eagleton, Springfield, Ill., Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., for appellant.

Louis F. Gillespie, George B. Gillespie, Frederick H. Stone, Springfield, Ill., for appellee; Gillespie, Burke & Gillespie, Springfield, Ill., of counsel.

Fred. C. Scribner, Jr., Thomas C. Thompson, Jr., Washington, D. C., for amicus curiæ.

David A. Sutherland, Washington, D. C., William C. Smith, Bruce A. Coggeshall, Portland, Me., for American Life Convention as amicus curiæ; Scribner, Hall & Casey, Washington, D. C., Pierce, Atwood, Scribner, Allen & McKusick, Portland, Me., William B. Harman, Jr., Washington, D. C., of counsel.

Before CASTLE, Chief Judge, HASTINGS, Circuit Judge, and KNOCH, Senior Circuit Judge.

CASTLE, Chief Judge.

The United States of America, defendant-appellant, prosecutes this appeal from a judgment in the amount of $1,303,011.-88 entered against it in favor of The Franklin Life Insurance Company,[1] plaintiff-appellee. The judgment represents a refund of amounts assessed against the taxpayer as income tax deficiencies, and interest thereon, for the calendar years 1958 through 1962. The taxpayer had paid the deficiencies and brought suit in the District Court for refund.

The issues presented on appeal involve the construction and application of the Life Insurance Company Income Tax Act of 1959, Sections 801 through 820 of the Internal Revenue Code of 1954, as amended (26 U.S.C.A. §§ 801–820). The Act establishes a statuory framework directed to the measurement of life insurance company total income on an annual basis for use in the application of an annual tax. It utilizes a series of separate com-

putations in the determination of the final tax.[2] A tax at corporation rates is levied on "life insurance company annual income". As it applies in the instant case, a third factor having no application to the taxpayer for the years here involved, such annual income is defined in Section 802(b) to be the sum of:

"(1) the taxable investment income (as defined in section 804) or, if smaller, the gain from operations (as defined in section 809, [plus]

(2) if the gain from operations exceeds the taxable investment income, an amount equal to 50 percent of such excess, * * *."

In addition to defining various of the items to be used in the computations required in the ascertainment of investment income and gain from operations, the Act (Section 818(a)) provides:

"All computations entering into the determination of the taxes imposed by this part shall be made—

(1) under an accrual method of accounting, or

(2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).

Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners."

The first two specific issues presented on appeal involve basically the same problem—that is, the way in which deferred and uncollected portions of gross annual premiums [3] are to be handled in the com-

1. Hereinafter referred to as "taxpayer".

2. For a short description of the Act, see United States v. Atlas Life Insurance Co., 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed. 2d 358.

3. The gross annual premium under a life insurance policy is the consideration paid by the insured for coverage for a policy

putations. The Commissioner held: (1) that taxpayer in computing gain from operations pursuant to Section 809 was not entitled to a deduction or offset for "increase in loading on deferred and uncollected premiums" and (2) that taxpayer was not entitled to exclude the loading on deferred and uncollected premiums from assets in the computation of investment income pursuant to Section 804, but was required to reflect the full gross premium in assets. The District Court concluded, to the contrary, that taxpayer was entitled to deduct or offset the item "increase in loading on deferred and uncollected premiums" in computing gain from operations, and was entitled to exclude the loading on deferred and uncollected premiums from assets for purposes of the Section 804 computation of investment income.

The other two specific issues involve the treatment of interest on loans to policyholders. The life insurance policies and annuity contracts issued by taxpayer, which have cash values, provide that a loan may be obtained on the sole security of the policy at any time that a cash value is available and while the policy is in force. Interest on policy loans is payable in advance at the time the loan is made to the end of the current policy year and annually thereafter on the policy anniversary date for the ensuing year. If interest on the policy loan is not paid when due, it is added to the principal of the existing loan and bears interest at the same rate. The Commissioner held that the full amount of the interest paid in

advance must be included in investment income in the year of its receipt, and that the full amount of interest added to principal must be included in assets in the investment income computation in the year added. The District Court concluded that taxpayer need recognize as income only the portion of the interest received and deemed earned in the taxable year, and need recognize for asset purposes only the portion of interest added to principal deemed earned in the taxable year.

Examination of the District Court's findings and conclusions reveals that it rejected the Commissioner's holdings with respect to the treatment to be accorded to loading on deferred and uncollected premiums on the premise that the treatment of this item in the annual statements filed by taxpayer with the various state insurance departments reflects a method of accounting with respect to such item which must be given governing effect in the computation of the "gain from operations" and "investment income" factors of the tax formula contained in the Internal Revenue Code. In this connection the record discloses that the treatment accorded the loading on deferred and uncollected premiums under the method of accounting prescribed by the National Association of Insurance Commissioners (NAIC) for use in the preparation of the annual statement form it has designed to show the solvency status on a liquidation basis of life insurance companies permits the offsetting of increase in loading on deferred

year, which is twelve-months from the date of issuance of the policy, and each twelve-month period subsequent to its anniversary date. Deferred and uncollected premiums are portions of the annual premiums on policies in force at the end of the taxable year on which collection has not been made. This non-collection is attributable either to the fact that (1) policy premium installments are spread over the policy year and a portion of the gross annual premium will not be collected until the following taxable year, or (2) the premium is due but not yet paid because of the thirty-one day grace period provided in the policies.

In addition, the gross annual premium (and any deferred or uncollected portion thereof) is composed of two elements. The net valuation portion, referred to as the net valuation premium, is an amount, computed under legally required interest and mortality assumptions, which it is estimated will be required each policy year for reserves for payment of policy claims. The difference between gross annual premium and net valuation premium, referred to as loading, makes up the second portion. It represents agents' commissions, administrative expenses, etc.

and uncollected premiums in the determination of company income and the exclusion of loading on deferred and uncollected premiums in the determination of company assets. The NAIC was organized in 1871 and is a national organization composed of the officials of the various states who are charged with the supervision of life insurance companies and their operations. Soon after its organization, the NAIC adopted a uniform annual statement form and life insurance companies have filed their annual statements since that time on such forms in accordance with the instructions prepared by the NAIC for such purpose. The taxpayer was required by the laws of Illinois, the state of its incorporation, and of the other states in which it did business to complete and file the NAIC annual statement form and to comply with the instructions approved by the NAIC for use in that connection. The taxpayer did so with respect to its annual statements for the tax years here involved.

■ But it is our opinion that the District Court erred in giving overriding effect to the method of accounting utilized by the NAIC for annual statement purposes. Reliance upon the provisions of Section 818(a) quoted supra does not warrant the conclusion the court reached. The crucial question here is not whether the method of accounting prescribed by the NAIC in connection with the annual statement form it has designed to show solvency status is in its nature a form of accrual accounting or whether the adjustments permitted thereunder are required or appropriate for the purpose the annual statement form is to serve. Nor is it of import that Section 818(a) in prescribing that "computations" entering into the determination of the tax imposed shall be made under an accrual method of accounting provides that except for such restriction [4] computations shall be made in a manner consistent with that required for NAIC annual report purposes. The

careful and detailed attention given by Congress throughout Sections 801 through 820 to definition of the particular items utilized as factors in the tax formula and in specifying and enumerating the permissible deductions and exclusions negates the existence of any intent on the part of Congress to relegate the substantive matter of offsetting or excluding loading on deferred and uncollected premiums, with its concomitant impact on the resulting tax, to the NAIC.

■ Section 809(c) (1) specifically requires the inclusion of "the gross amount of premiums" for the purpose of determining "gain from operations" as defined in Section 809(b) (1). Taxpayer concedes that the intent and purpose of the Act require that the deferred and uncollected premiums be included in income on a gross basis (which includes loading). In our view that concession leaves no basis for further controversy. This is especially so in view of the fact that Congress has provided twelve specific deductions in Section 809 but makes no provision for an offset or deduction for "increase in loading". And, the burden is on the taxpayer to show the express statutory authority for a deduction claimed. Equitable Life Insurance Co. of Iowa v. United States, 8 Cir., 340 F.2d 9.

Taxpayer seeks to justify the District Court's exclusion of loading on deferred and uncollected premiums from assets in the computation of "investment income" pursuant to Section 804 on the basis of taxpayer's obligations to policyholders, i. e., reserves. But taxpayer in computing its reserves for tax purposes did so on the assumption that on each policy anniversary the full annual premium has been received. The very reason for showing deferred and uncollected premiums in full in assets is that this is in accord with actual accrual accounting principles. Wightman, Life Insurance Statements and Accounts (1952), pp. 44–46. The assumption that the annual

---

4. The clause of Section 818(a) which permits uses of a combination of accounting methods exclusive of a cash receipts and disbursements method, to the extent permitted by regulation prescribed by the Secretary or his delegate, has no application in the instant case.

premium has been received in full is, of course, a fiction, since annual premiums on all policies have not been received as of the end of the taxable year; rather, a portion thereof remains deferred and uncollected. The use of the fiction results in a bigger reserve liability figure and consequently bigger reserve liability deductions and exclusions than if reserves were computed on the basis of only those premiums actually received. If the fictional assumption were not indulged and only those reserves were accrued as were attributable to paid up portions of annual premiums, then the problem from an accrual standpoint would be simpler. But, Congress, apparently cognizant of the assumption upon which taxpayer and other life insurance companies compute reserves for annual statement purposes because of state statutory requirements chose to recognize such assumption in the tax formula it prescribed and to base an accrual reporting requirement on that assumption. And, the application of accrual principles after that assumption has been made, will not permit of accrual of the entire annual reserve on one hand without incident accrual of the full annual premium. The District Court would permit the taxpayer to accrue a full year's liability without a corresponding accrual of the related year's asset in point of time. Such a result would attribute to Congress an intention that in the same statutory equations, exclusions and deductions attributable to reserves are to be based on the assumption that the annual premium is fully paid up and yet the amounts in the same equation from which these figures are to be subtracted are to be determined on the assumption that the annual premium is not fully paid up. This is, in effect, saying that Congress, when it specified accrual accounting, must have meant one rule to apply to reserve deductions and exclusions and another different accrual rule to apply to determining the amount from which the former are to be subtracted. We perceive nothing from which intent to impose such a dual standard of tax accounting can be presumed.

That the NAIC is willing to allow an admittedly overstated reserve while at the same time allowing an accounting entry with respect to assets which, while compensating *numerically* for the overstatement, does not fully account for the related asset, is of no aid to the taxpayer here. The acceptance of such an adjustment as being in accord with conservative and stringent solvency requirements does not permit of the utilization of such an approach to alter or modify the substantive provisions of a tax formula concerned with the *proportionate* relationship between assets and reserves. The gearing of the tax statute to an annual reserve requires recognition of no less than the annual premium.

We conclude on the phases of the appeal concerning the District Court's resolution of the issues involving the treatment of deferred and uncollected portions of gross annual premiums that the District Court erred,[5] and we turn to consideration of the remaining issues related to the treatment of interest on loans to policyholders.

Under the express terms of taxpayer's policy loan agreements with borrowers interest is paid in advance at the time of the loan to the end of the current policy year and annually thereafter on the policy anniversary date for the ensuing year, and interest not paid when so due is added to the principal of the existing loan. As hereinbefore stated, the Commissioner held that the full amount of the interest paid in advance must be included in investment income in the year of its re-

5. We are cognizant of, and have considered, the recent decision of the Tax Court in Western National Life Insurance Company of Texas v. Commissioner (Opinion dated May 13, 1968) in which it is held that the entire amount of deferred and uncollected premiums is to be excluded from the asset side of the formula. The Tax Court opines that "only resort to medieval metaphysics could translate the items in question [deferred and uncollected premiums] into 'assets'". But see: Jefferson Standard Life Insurance Co. v. United States, M.D.N.Car., 272 F.Supp. 97 (1967).

ceipt, and that the full amount of interest added to principal must be included in assets in the investment income computation in the year added. The District Court concluded that taxpayer need recognize as income only the portion of the interest received and deemed earned in the taxable year, and need recognize for asset purposes only the portion of interest added to principal deemed earned in the taxable year. In this connection the record discloses, and the court found, that the whole or any part of the indebtedness arising from a policy loan may be repaid at any time; if repayment of a policy loan is made during the policy year, the exact amount of interest ratably earned by the taxpayer is retained by it and the residue is returned to the policyholder; if the policyholder should surrender his policy for the cash value then only the exact amount of prepaid interest ratably earned is retained by the taxpayer and the residue is returned to the policyholder; and if the policyholder should die then only the exact amount of prepaid interest ratably earned is retained by the taxpayer and the residue is paid to the beneficiary of the policy. Capitalized interest added to principal is similarly retained or returned on the basis of whether it has been ratably earned. Taxpayer's books are kept on this basis. Interest on policy loans is taken into income or assets only as ratably earned. In view of the foregoing considerations the District Court reasoned that the Commissioner's treatment of the prepaid interest and the capitalized interest items constituted application of "a hybrid method of accounting * * * partially on an accrual method and partially upon a cash receipts and disbursements method in contravention of Sec. 818(a) (2) of the Internal Revenue Code of 1954 which enjoins the Commissioner from using the cash receipts and disbursements method for determining the taxable income of a life insurance company".

In support of the District Court's conclusion that taxpayer need recognize as income and assets only the portion of prepaid or capitalized interest which has been ratably earned during the taxable year the taxpayer points to the possibility that if the borrower elects to terminate the loan or dies taxpayer will be in the position of returning some of the interest paid to it and argues that the money it receives must be *earned* before it is includable in its taxable income as an accrual basis taxpayer.

There is no question that taxpayer is an accrual basis taxpayer. Section 818 (a) requires that it utilize an accrual method of accounting for the determination of its income tax. But, non-deferral of prepaid items is not foreign to permissible or required accrual accounting for income tax purposes. Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633; American Automobile Association v. United States, 367 U.S. 687, 695, 81 S. Ct. 1727, 6 L.Ed.2d 1109. Thus, as pointed out in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S. Ct. 613, 615, 76 L.Ed. 1197:

> "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

And, here the taxpayer receives the interest under a binding agreement with the borrower calling for its receipt and without restriction upon its use by the taxpayer. The money is "earned" in a context sufficient for full tax recognition in that taxpayer, when it receives the interest, is fully entitled to it under the express terms of the policy loan agreement. And taxpayer is free to use or invest the full sum in any way it sees fit. The taxpayer, for the purpose of its own bookkeeping, may choose to reflect the money so received only over the course of the policy year, but this does not negate the fact that the interest has been received without restriction as to its use.

Apart from any charismatic application of the "claim of right" concept re-

ferred to in North American Oil Consolidated, supra, we are of the view that the underlying rationale of Schlude and American Automobile Association leaves the Commissioner free to reject the deferral of prepaid items where not to do so would not "clearly reflect income" in accord with the command of Section 446 (b) [6] of the Internal Revenue Code. Required use of an accrual method of accounting is not a dispensation from the fundamental precept that the accounting clearly reflect that which by a present right to receipt is "earned", and is subject to the taxpayer's dominion and use, although a possibility of its future return may exist. A recent application of this doctrine is found in Van Wagoner v. United States, 5 Cir., 368 F.2d 95. Moreover, taxpayer made no showing of its experience with respect to the return of prepaid interest. It did not demonstrate that any significant amount was actually refunded. In this respect the taxpayer's proposed treatment of the item, with which the District Court agreed, appears to be as artificial as the bases for deferral relied upon and rejected in Schlude and American Automobile Association.

Taxpayer's reliance upon Gunderson Bros. Engineering Corp. v. Commissioner, 42 T.C. 419, and Luhring Motor Co. v. Commissioner, 42 T.C. 732, is misplaced. Those cases did not involve amounts actually received by the taxpayers by way of prepayment. Beacon Publishing Co. v. Commissioner of Internal Revenue, 10 Cir., 218 F.2d 697,

and Schuessler v. Commissioner of Internal Revenue, 5 Cir., 230 F.2d 722, are distinguishable. See American Automobile Association, 367 U.S. 687, 691, 81 S.Ct. 1727, 6 L.Ed.2d 1109 footnote 4. Likewise, certiorari was granted in American Automobile Association in recognition of the conflict between Bressner Radio, Inc. v. Commissioner of Internal Revenue, 2 Cir., 267 F.2d 520, and American Automobile Association v. United States, 181 F.Supp. 255, 149 Ct.Cl. 324, and the conflict was resolved against *Bressner*. Consequently, we are not persuaded by the decisions upon which taxpayer chiefly relies. Nor are we impressed by the support taxpayer attempts to glean from the dissent in *American Automobile Association*.

■ We conclude that the District Court's conclusion with respect to prepaid and capitalized policy loan interest was erroneous.

We have considered certain additional but subsidiary or peripheral contentions the taxpayer and amicus curiae have advanced in support of their position on appeal, but we are of the view that none of them merit an extension of this opinion for the purpose of discussing the same.

The judgment order of the District Court is reversed and the cause is remanded to the District Court with directions to enter a judgment order consistent with this opinion.

Reversed and remanded with directions.

---

**6.** 26 U.S.C.A. § 446, which provides in pertinent part as follows:
"(a) General rule.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
  (b) Exceptions.—If no method of accounting has been regularly used by the

taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."