NORTH AMERICAN LIFE AND CASUALTY COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4840-69. Filed December 17, 1974.

*Edward G. Hearn* and *Michael J. Cuddy,* for the petitioner.
*Robert F. Cunningham,* for the respondent.

WILES, *Judge:* Respondent determined deficiencies in the income tax of petitioner for the years and in the amounts as follows:

| Year | Deficiency |
| --- | --- |
| 1960 | $3,053.38 |
| 1961 | 121,168.00 |
| 1963 | 22,757.00 |

Some of the issues have been settled by the parties. The issues remaining for decision are:

(1) Whether petitioner is entitled to deduct accrued commissions on deferred premiums in the year these premiums are included in income;

(2) Alternatively, whether petitioner is entitled to deduct the loading portion of deferred premiums; or

(3) Whether petitioner is entitled to exclude from income the loading portion of deferred premiums.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

North American Life & Casualty Co. (hereinafter referred to as North American or petitioner) was incorporated in 1896 under the laws of the State of Minnesota. Petitioner filed its

corporation income tax returns for taxable years ending December 31, 1960, December 31, 1961, and December 31, 1963, with the district director of internal revenue in St. Paul, Minn. At the time of the filing of the petition, North American's principal office was located in Minneapolis, Minn.

Petitioner was incorporated in 1896 to transact the business of life and casualty insurance on the cooperative or assessment plan. Its articles of incorporation were amended in 1912 transforming petitioner into a legal reserve life and casualty company on the stock plan as provided by the laws of the State of Minnesota. On September 15, 1915, license was granted to North American to transact life, accident, and health insurance on the stock plan. Petitioner qualifies as a life insurance company within the provisions of section 801(a).[1]

Petitioner was required and did keep its books and records on the accrual basis for Federal income tax purposes.

Petitioner's life and casualty insurance operations and accounts are subject to the control, supervision, and approval of the commissioner of insurance for the State of Minnesota. Also, because it does business in numerous States, its accounts are subject to periodic audit by the National Association of Insurance Commissioners (hereinafter referred to as NAIC), which acts on behalf of the insurance departments of the various States. The NAIC is a voluntary organization composed of officials of various States charged with the supervision of insurance companies and their operations. It has adopted a uniform annual statement form for use by life insurance companies in filing their annual statements with the various State insurance commissioners, including Minnesota's Commissioner of Insurance (hereinafter referred to as commissioner of insurance). Petitioner filed its annual statement for each of the years 1958 to 1963, inclusive, with the commissioner of insurance in accordance with instructions furnished by him for completing annual statements on forms approved by the NAIC.

The parties have stipulated that certain terms common to the life insurance industry have the following meanings: *Gross annual premium:* The contract price or amount actually charged the insured on an annual basis to keep the contract in force, composed of the net valuation premium plus loading, which

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise indicated.

amount may be paid in any of the four common modes of collection: annual, semiannual, quarterly, or monthly. *Net premium:* The premium necessary to cover mortality costs based on the insurance company's experience. *Net valuation premium:* The amount which it is estimated, using the applicable mortality tables and interest assumptions for the policy, will be required to pay claims and provide the benefits of the policy. The portion which is required by State law to be held as reserve is based upon the net valuation premium. *Loading:* This refers to a life insurance company's estimated administration, management, and operating expenses, various contingencies, anticipated profits in the case of capital stock insurance companies, and dividends in the case of mutual insurance companies and stock insurance companies issuing participating policies. The amount of loading results from an independent judgment of each particular life insurance company and may vary in amount from company to company. *Deferred premium:* That portion of the gross contract premium on policies with premiums payable more often than annually which becomes due after December 31 of the calendar year and before the next policy anniversary date. *Uncollected premium:* An annual or installment premium which, as of December 31 of a calendar year, has become due but has not as yet been paid. *Loading on deferred premium:* This represents, from a technical standpoint, the difference between the gross annual premium and the net annual valuation premium.

The insured has no obligation, legal or otherwise, to pay the insurer deferred and uncollected premiums. If the insured does not pay the premium in conformity with the provisions of the policy, the policy will lapse after the grace period; nor does the petitioner (insurer) have a legal right to collect the deferred and uncollected portion of the gross contract premium from the insured. Petitioner typically employs a grace period of 31 days on all insurance policies in force.

During the years in issue, petitioner was required by the commissioner of insurance and by NAIC to compute its reserves on its life insurance policies on the assumption that on each policy anniversary date the full annual gross contract premium had been received, even though such premium was not necessarily paid in this manner. The portion required under State law to be held as reserve is based upon the net valuation premium. The reserves so computed were reflected as a liability

of the petitioner and taken into account in computations under the pertinent sections of the Internal Revenue Code of 1954, as amended by the Life Insurance Company Income Tax Act of 1959, on the returns filed by petitioner for taxable years 1961 and 1963.

On its original Federal income tax returns for the years 1958 to 1961, inclusive, petitioner claimed a deduction for "increase in loading, etc." taken from line 25 of the summary of operations section of its annual statement. In the course of an Internal Revenue Service audit of petitioner's Federal income tax returns for the years 1958, 1959, and 1960, the examining agent disallowed the deduction claimed for "increase in loading, etc." and allowed as a deduction "accrued commissions" on deferred premiums in lieu of the increase in loading. Subsequent thereto, petitioner filed with the district director an amended return for 1961, in which it deleted its claimed deduction for "increase in loading, etc." but did claim a deduction for "accrued commissions" on gross deferred and uncollected premiums. On its original 1963 return, petitioner did not claim a deduction for "increase in loading, etc." but claimed a deduction for "accrued commissions" on gross deferred premiums.

The amount of loading on deferred and uncollected premiums reported by petitioner on its annual statements for the years 1960 to 1963, inclusive, are as follows:

| Years | Amounts | Years | Amounts |
|---|---|---|---|
| 1960 | $808,497 | 1962 | $933,166 |
| 1961 | 876,815 | 1963 | 841,872 |

The increase in loading, the difference between the loading at yearend, and the loading at the beginning of the year, as reported on petitioner's annual statements for the years 1960 to 1963, inclusive, are as follows:

| Years | Amounts | Years | Amounts |
|---|---|---|---|
| 1960 | $23,465 | 1962 | $56,351 |
| 1961 | 68,318 | 1963 | (91,294) |

Approximately 90 percent of petitioner's claimed accrued commissions on gross deferred premiums in its 1960 to 1963, inclusive, income tax returns were paid in the following year.

Petitioner obtains its insurance policy sales through the use of various personnel. It employs many managers, some of which are on a salary basis, with the remainder under contract as field

underwriters with a supplemental compensation agreement. Under the compensation agreement, in addition to the earnings as a field underwriter, the manager receives a stipulated "overwriting commission" on all business credited to his office and a bonus on business produced by any new full-time field underwriters assigned to his office. The latter is called "New Man Bonus."

Petitioner also employs agents who are called field underwriters and who work under the direction of the managers. The contracts between the field underwriters and petitioner may be terminated on 30 days' written notice. On such termination, only the deferred first year commissions are vested. If a field underwriter leaves the employment of petitioner before any other deferred premiums are due, he forfeits any right to commissions based on the premiums. In addition to field underwriters, petitioner also has a large number of brokers under contract.

Commissions applicable to deferred premiums are credited to the field underwriter as of the premium due date in conjunction with the premium billing operation. In the event that the premiums are not subsequently collected and the policy is terminated, the commission amount credited is charged back against the field underwriter. This chargeback is made at the time the policy is lapsed which is 40 days after the premium due date.

Petitioner considers commissions to be a direct consequence or result of the receipt of premiums.

The amounts of accrued commissions allowed by the revenue agent in his examination of the 1960 tax return and the amounts of accrued commissions on deferred premiums claimed in petitioner's tax returns for the years 1961, 1962, and 1963 were as follows:

| Years | Amounts | Years | Amounts |
|---|---|---|---|
| 1960 | $76,194 | 1962 | $72,433 |
| 1961 | 120,718 | 1963 | 80,971 |

Petitioner arrived at the amount of accrued commissions on deferred premiums by determining the ratio of total commission expenses to premium revenue and then applying this percentage ratio to gross deferred premiums for that year. At the trial,

petitioner asserted that it was entitled to the following lower amounts of deduction:

| Years | Amounts |
|-------|---------|
| 1961 | $119,212 |
| 1962 | 67,976 |
| 1963 | 66,615 |

The figures were revised downward to reflect "unearned commissions," which are those commissions which would have been payable to an agent except for the fact that the agent has left the company and for that reason forfeited his right to receive commissions.

## OPINION

The main issue is whether petitioner is entitled to deductions for commissions on deferred premiums which it claims are accrued as of the end of each taxable year. Alternatively, petitioner contends that it (1) is entitled to a deduction for loading added to deferred premiums or (2) is entitled to exclude from deferred premiums included in income the amounts which represent the loading factor.

Petitioner is a life insurance company as defined in section 801(a)(1) and, as such, is subject to the provisions of sections 801 through 820 for income tax purposes.

Section 802(a)[2] provides a three-phase tax base for the taxation of life insurance companies; the first is on a portion of

---

[2] SEC. 802. TAX IMPOSED.

(a) TAX IMPOSED.—

(1) IN GENERAL.—A tax is hereby imposed for each taxable year beginning after December 31, 1957, on the life insurance company taxable income of every life insurance company. Such tax shall consist of—

(A) a normal tax on such income computed at the rate provided by section 11(b), and

(B) a surtax, on so much of such income as exceeds $25,000, computed at the rate provided by section 11(c).

(2) TAX IN CASE OF CAPITAL GAINS.—If for any taxable year beginning after December 31, 1958, the net long-term capital gain of any life insurance company exceeds the net short-term capital loss, there is hereby imposed a tax equal to 25 percent of such excess.

* * *

(b) LIFE INSURANCE COMPANY TAXABLE INCOME DEFINED.—For purposes of this part, the term "life insurance company taxable income" means the sum of—

(1) the taxable investment income (as defined in section 804) or, if smaller, the gain from operations (as defined in section 809),

(2) if the gain from operations exceeds the taxable investment income, an amount equal to 50 percent of such excess, plus

(3) the amount subtracted from the policyholders' surplus account for the taxable year, as determined under section 815.

the lesser of its investment income or gain from operations, the second is on one-half of the excess of its gain from operations over investment income, and the third is on the amount subtracted from the policyholders' surplus account for the taxable years. Section 809 provides general rules for the determination of a life insurance company's gain from operations. Section 809(c)(1)[3] provides that gain from operations includes the gross amount of premiums on insurance and annuity contracts. Section 809(d) provides for 12 enumerated deductions allowed in determining gain from operations, the subsection pertinent to this case being as follows:

> (12) OTHER DEDUCTIONS.—Subject to the modifications provided by subsection (e), all other deductions allowed under this subtitle for purposes of computing taxable income to the extent not allowed as deductions in computing investment yield.

Except as provided in paragraph (3), no amount shall be allowed as a deduction under this subsection in respect of dividends to policyholders.

With regard to the main issue only, petitioner concedes that the term "gross amount of premiums" under section 809(c)(1) includes the gross amount of deferred premiums, i.e., the net valuation premium plus loading. Petitioner contends that it is entitled to deduct, under section 809(d)(12), accrued commissions on deferred premiums in determining gain from operations for taxable years ending December 31, 1961, and December 31, 1963.[4] Respondent contends that petitioner is not entitled to deductions for commissions on deferred premiums on either of two grounds as follows: (1) The commissions on deferred premiums have not accrued as of the end of each taxable year under section 461, or (2) the deduction for commissions on deferred premiums is in fact a deduction for loading and therefore not deductible under *Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842 (C.A. 4, 1969), certiorari

---

[3] SEC. 809(c). GROSS AMOUNT.—For purposes of subsections (b)(1) and (2), the following items shall be taken into account:

(1) PREMIUMS.—The gross amount of premiums and other consideration (including advance premiums, deposits, fees, assessments, and consideration in respect of assuming liabilities under contracts not issued by the taxpayer) on insurance and annuity contracts (including contracts supplementary thereto); less return premiums, and premiums and other consideration arising out of reinsurance ceded. Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums.

[4] The parties have settled all issues arising from the year ending Dec. 31, 1960.

denied 396 U.S. 828 (1969); and *Franklin Life Insurance Co. v. United States,* 399 F.2d 757 (C.A. 7, 1968).

Section 818 [5] provides that generally all computations entering into the determination of taxes for life insurance companies shall be made on an accrual method of accounting. Section 461(a) [6] provides that a deduction shall be allowed in the proper taxable year under the method of accounting used in computing taxable income. Section 1.461-1(a)(2), Income Tax Regs., sets forth the general rule for determining the proper year for deduction by an accrual method taxpayer as follows:

Under an accrual method of accounting, an expense is deductible for the taxable year in which *all the events have occurred which determine the fact of the liability* and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. * * * [Emphasis added.]

Petitioner does not contend that commissions on deferred premiums have accrued as of the end of each taxable year under the requirements of section 461, nor did it present any evidence at the trial to indicate that they had so accrued. Petitioner argues that the "all events test" of section 1.461-1(a)(2) is not applicable in determining the deductibility of commissions on deferred premiums for life insurance companies; rather, petitioner suggests that an approach that matches related items of income and deductions should be applied. Four circuit Courts of Appeals have held that gross deferred premiums are required to be included in income under section 809(c)(1) for Federal tax purposes even though the life insurance companies had no legal

---

[5] SEC. 818. ACCOUNTING PROVISIONS.

(a) METHOD OF ACCOUNTING.—All computations entering into the determination of the taxes imposed by this part shall be made—

(1) under an accrual method of accounting, or

(2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).

Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.

[6] SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(a) GENERAL RULE.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

right to collect such premiums from the insured individuals. *Great Commonwealth Life Insurance Co. v. United States,* 491 F. 2d 109 (C.A. 5, 1974); *Western & Southern Life Insurance Co. v. Commissioner,* 460 F. 2d 8 (C.A. 6, 1972), reversing 55 T.C. 1036 (1971), certiorari denied 409 U.S. 1063 (1972); *Jefferson Standard Life Insurance Co. v. United States,* 408 F. 2d 842 (C.A. 4, 1969), certiorari denied 396 U.S. 828 (1969); *Franklin Life Insurance Co. v. United States,* 399 F. 2d 757 (C.A. 7, 1968), certiorari denied 393 U.S. 1118 (1969). The position of these courts has also recently been adopted by this Court in *Bankers Union Life Insurance Co.,* 62 T.C. 661 (1974). Petitioner argues that since the fact of liability is ignored for purposes of accruing income from deferred premiums, the fact of liability for purposes of accruing deductions for commissions on deferred premiums should also be ignored.

In *Great Commonwealth Life Insurance Co. v. United States, supra,* the Fifth Circuit held that an insurance company should be entitled to deduct commissions on deferred premiums when the premiums giving rise to such commissions are required to be included in income. The Fifth Circuit conceded that such expenses were not properly accruable under section 461. It based its holding on a "need to avoid undue distortion of income." Petitioner also cites the case of *United Life & Accident Insurance Co. v. United States*, 329 F. Supp. 765 (D. N.H. 1971), as support for its position. In that case, the District Court held that once collection of deferred premiums is assumed for inclusion in income purposes, it must also be assumed for purposes of deducting expenses applicable to the deferred premiums. The reasoning of the court is shown as follows:

The government contends, and three Circuit Courts of Appeals and I agree, that deferred and uncollected premiums must be reported as income under the Act even though the company has absolutely no right to collect them. Once it is assumed that deferred and uncollected premiums have accrued, then the expense portion of those premiums has also of necessity accrued. If collection is assumed for income purposes, then it should be assumed for expense purposes. Consistency requires that the same assumption that is applied to income from deferred and uncollected premiums be applied to the expenses associated with those premiums.

Since appeal in this case lies to the Eighth Circuit, which has not passed on this issue, we are not required to follow the decision of the Fifth Circuit Court of Appeals. *Nathan Cummings,* 61 T.C.

1 (1973); *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971). The Eighth Circuit has stated, however, that when uniformity of the circuits is important, the decision of another Court of Appeals should be followed unless demonstratably erroneous or unsound. *Goodenow v. Commissioner,* 238 F. 2d 20 (C.A. 8, 1956), reversing 25 T.C. 1 (1955).

For the reasons stated below, we follow the position of the Fifth Circuit in the *Great Commonwealth* case and hold that petitioner is entitled to deduct accrued commissions applicable to deferred and uncollected premiums. Petitioner is required to accrue deferred and unpaid premiums even though it has no right to receive them and, as all parties agree, normal tax accrual rules would not require their inclusion. This position is based primarily on the assumption that on each policy anniversary date the full annual gross premium had been received. Thus, for purposes of accrual of income, the contingency of no liability for payment is negated by application of the assumption of full collection of the gross premiums. Respondent now contends that petitioner is not entitled to accrue deductions for commissions applicable to such premiums because they are subject to the contingency that, if such premiums are not received, petitioner has no liability to pay the resultant commissions. This contention, however, ignores the assumption utilized to require accrual of the premium income. Once the fiction of annual receipt of premiums is accepted, it must be applied for all purposes. Upon receipt of premiums, it is clear that a liability to pay commissions arises. Assumption of receipt of premiums necessarily requires recognition of the concomitant liabilities, for the petitioner cannot receive premiums without incurring corresponding commission expenses. Both the accrual of income and deduction of commissions are subject to the same contingency, that is, the receipt of the premiums. Respondent cannot ignore the contingency in requiring accrual of income yet assert such contingency in determining the accrual of related deductions.

Although there are no cases directly on point, we find support for this position in the following cases. *W. S. Badcock Corp. v. Commissioner,* 491 F. 2d 1226 (C.A. 5, 1974), reversing 59 T.C. 272 (1972); *Central Cuba Sugar Co. v. Commissioner,* 198 F. 2d 214 (C.A. 2, 1952); *Warren Co.,* 46 B.T.A. 897 (1942), affd. 135 F. 2d 679 (C.A. 5, 1943); *Air-Way Electric Appliance*

*Corporation v. Guitteau,* 123 F. 2d 20 (C.A. 6, 1941); *Ohmer Register Co. v. Commissioner,* 131 F. 2d 682 (C.A. 6, 1942). Each of these cases involved the deductibility of sales commissions which arose from the sale of goods the income from which was required to be accrued currently. These cases held that the related commissions were currently deductible because the income from the sale, out of which both income and commission arose, was currently accruable. In other words, these cases stand for the proposition that an item of income and its related deductions which are subject to the same fact of contingency should be treated alike for accrual purposes. In the present situation the contingency for accrual of income and deduction of commissions is the same. That is, the contingency for accrual is the collection of the deferred and uncollected premiums. Having assumed for inclusion purposes that the contingency of collection is subject to the fiction that all premiums have been collected, we cannot treat the deduction of the related expenses on the basis that the fiction of collections did not exist. In other words, the contingency with regard to the collection of income and the contingency with regard to the deduction of expenses related thereto are negated by the acceptance of the assumption that all premiums have been collected on an annual basis.

With regard to the question of whether petitioner's deductions were determined with reasonable accuracy, we recognize that petitioner cannot determine the precise amount of commissions to be paid because it does not know the precise amount of deferred premiums which will be collected. Since, however, petitioner is required to include the entire amount of deferred premiums in income, it is only reasonable to permit petitioner deductions for commissions which it would pay on such deferred premiums. In the present case, petitioner determined the amount of accrued commissions based upon the figures which were known to it, and adjusted downward to reflect a reasonable estimate for unearned commissions. As noted hereinbefore, approximately 90 percent of petitioner's claimed accrued commissions on gross deferred premiums in its 1960 to 1963, inclusive, income tax returns were in fact paid in the year following accrual. We hold that petitioner has, under these circumstances, determined the deductible amounts with reasonable accuracy.

Finally, we find no merit in respondent's argument that commissions on deferred premiums are in fact deductions for

loading, the deduction of which has been disallowed in *Jefferson Standard Life Insurance Co. v. United States,* 408 F. 2d 842 (C.A. 4, 1969), certiorari denied 396 U.S. 828 (1969), and *Franklin Life Insurance Co. v. United States,* 399 F. 2d 757 (C.A. 7, 1968). The determination of loading involves the consideration of estimated administration, management and operating expenses, various contingencies and anticipated profits, the valuations of which depend upon the independent judgment of each life insurance company. In this case, petitioner did not claim deductions for administrative or management expenses nor for any contingencies or anticipated profits. The only connection between petitioner's deduction for accrued commissions on deferred and uncollected premiums and loading is that one of the factors considered in determining loading is commission expenses.

Having decided that petitioner is entitled to deduction for accrued commissions on deferred premiums, we do not reach petitioner's alternative arguments regarding deductibility of loading or exclusion of the loading factor portion of deferred premiums from income.

*Decision will be entered under Rule 155.*