NORTH AMERICAN LIFE AND
CASUALTY CO., Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 75–1380.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1976.

Decided April 14, 1976.

Arthur L. Bailey, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant; Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D. C., on briefs.

Michael J. Cuddy, New York City, for appellee.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and BRIGHT, Circuit Judge.

* The Honorable Tom C. Clark, Associate Justice, Retired, United States Supreme Court, sitting by designation.

GIBSON, Chief Judge.

This is an appeal from a decision of the United States Tax Court[1] overturning the Commissioner of Internal Revenue's disallowance of deductions taken by the taxpayer, North American Life and Casualty Co., for commission expenses attributable to premiums deferred and uncollected during the tax years 1961 and 1963. Taxpayer, a stock plan life, accident and health insurance company, qualified for treatment as a life insurance company under the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820 (Supp. V, 1959–63), *amending* the Internal Revenue Code of 1954 (the Code) then in effect, and was thus required to keep its books and records on an accrual basis for federal income tax purposes. Taxpayer operates under the supervision of the Commissioner of Insurance for the State of Minnesota and, since it conducts a multi-state business, is subject to periodic audits by the National Association of Insurance Commissioners (NAIC), the voluntary organization of state insurance officials that promulgated uniform annual statement forms used by the taxpayer in filing annual statements with the supervising authorities.

The sole issue in this case is the proper treatment, under accrual methods of accounting applicable to life insurance companies, of agents' estimated future commissions on deferred premiums. Deferred premiums are premium installments for the current policy year, on policies payable more frequently than annually, not yet due to be paid.[2] Since most life insurance policies are not issued on a calendar year basis, all policies that are payable either semi-annually, quarterly or monthly, rather than in a single annual premium, carry a deferred portion of the premium over into the ensuing calendar year. Further, since it has long been the practice and custom of life insurance companies to place the net valuation portion of the premium into a reserve on the anniversary date of each policy, the courts have almost unanimously held that companies must accrue the total gross annual premium in calculating income as of the anniversary date, whether or not the premium is then collected or totally collected in the current year. *See, e. g., Franklin Life Insurance Co. v. United States,* 399 F.2d 757 (7th Cir. 1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 123 (1969).

The net valuation portion of the premium is the amount of reserve necessary, under proper interest and mortality calculations, to properly fund the policy for payment of future claims. The amount that is required by state law to be held as a reserve is based upon the net valuation portion of the premium. The difference between the gross annual premium and the net valuation portion of the premium is referred to in the industry as "loading," and covers not only the expense of collecting the premiums (agents' commissions) but also administrative and managerial expenses, contingencies, anticipated profits in stock companies and dividends in mutual companies.

All of the circuits that have passed on the general accruability of the loading component of deferred premiums have held that the increase of loading on the deferred portion of premiums which is allowed as a deduction on the NAIC statement form is not properly accruable for federal income tax purposes. *See, e. g., Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842, 855–56 (4th Cir.), *cert. denied,* 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); *Franklin Life Insurance Co. v. United States, supra* at 760. The Commissioner contends that a deferred commission or

---

**1.** Reported as *North American Life & Cas. Co. v. Commissioner,* 63 T.C. 364 (1974) (Wiles, J.).

**2.** Though the Tax Court in its opinion discussed the timing of deductions for commissions payable on both "deferred" and "uncollected" premiums, taxpayer asserts that only commissions on *deferred* premiums are at issue here. Uncollected premiums are those due but not yet paid. Actual collection may not occur until the subsequent tax year because life insurance policies usually allow a "grace period" of at least 30 days after the premium due date before the policy will lapse for nonpayment of premium.

agent's expense is not accruable because it is but a part of the loading charge and because the taxpayer's liability for deferred commissions is not sufficiently fixed and ascertainable in the current year to comport with general accrual principles made applicable to insurance companies by § 818(a) of the Code. The Commissioner concedes that commission expenses are ultimately deductible under § 809(d)(12) of the Code, but challenges the taxpayer's attempt to deduct such expenses in the tax year prior to the time they become technically accruable under traditional accrual practices. The traditional requirements for accruability embodied in the Code are twofold: for an item of expense to be properly accruable, a taxpayer must show (1) that all events necessary to fix its liability for the expense have occurred, and (2) that the amount of the expense is ascertainable with reasonable accuracy. These traditional principles are made applicable by § 818(a) of the Code to calculation of both income, Treas.Reg. § 1.451–1(a) (1963), and deductions from income, Treas.Reg. § 1.461–1(a)(2) (1963).[3]

For the tax years 1961 and 1963 the Commissioner disallowed taxpayer's deductions of $120,718 and $80,971, respectively, claimed for commission expenses payable on receipt of premiums deferred until the succeeding years. These claimed deductions were later reduced by taxpayer to $119,212 and $66,615, respectively, to reflect its ultimate reduction in commission expense liability caused by failure to collect certain premiums and by termination of employment of certain agents. On review, the Tax Court overturned the Commissioner's

disallowance of the deductions, and the. Commissioner appeals.

The Tax Court's rationale, briefly stated, was that consistent methods of accounting must be used to calculate income on the one hand and expenses on the other; and since taxpayer is required by statute to accrue and include deferred premiums in income, it is entitled to deduct from income commission expenses directly attributable to receipt of such deferred but accrued premiums to maintain consistency. While the Tax Court viewed the expense for commissions attributable to deferred premiums as one component of loading, it found no merit in the Commissioner's argument that the expense is characterizable as a deduction for loading and for that reason required to be disallowed under *Jefferson Standard Life Insurance Co. v. United States, supra,* and *Franklin Life Insurance Co. v. United States, supra.* The court's reason for rejecting the Commissioner's loading argument was that while the loading component of insurance premiums incorporates many estimated administrative, management and operating expenses, including anticipated profits, which in no event would be deductible, the agents' commission component of loading is of a different character. It is an integral part of the cost of receiving the premiums and is thus a legitimate, predictable expense that can be ascertained with reasonable accuracy even with respect to deferred premiums, and should be deductible by an accrual taxpayer before being actually disbursed.

■ It is widely recognized that the calculation of income by a life insurance company under § 809(c)(1) of the Code[4] must

---

**3.** Treas.Reg. § 1.461–1(a)(2) (1963) states in relevant part as follows:

> (2) *Taxpayer using an accrual method.* Under an accrual method of accounting, an expense is deductible for the taxable year in which *all the events* have occurred which determine the fact of the liability and the amount thereof can be determined with *reasonable accuracy.* * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual with-

in the taxable year of such part thereof as can be computed with reasonable accuracy. (Emphasis added.)

**4.** Section 809(c)(1) states as follows:

> (c) *Gross Amount.*
> For the purposes of subsections (b)(1) and (2) [defining gain and loss from operations], the following items shall be taken into account:
> (1) *Premiums.*
> The gross amount of premiums and other consideration (including advance premiums, deposits, fees, assessments, and considera-

include not only the premiums received in the current tax year but also the gross deferred premiums in the current policy years (overlapping with the succeeding tax year) not yet payable, despite the fact that the insurance company has no legal right to collect such deferred premiums. *Great Commonwealth Life Insurance Co. v. United States,* 491 F.2d 109, 112 (5th Cir. 1974); *Western & Southern Life Insurance v. Commissioner of Internal Revenue,* 460 F.2d 8, 12 (6th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972); *Jefferson Standard Life Insurance Co. v. United States, supra* at 856; *Franklin Life Insurance Co. v. United States, supra* at 760; *Bankers Union Life Insurance Co. v. Commissioner of Internal Revenue,* 62 T.C. 661, 672–75 (1974). *Contra, Standard Life & Accident Insurance Co. v. Commissioner of Internal Revenue,* 525 F.2d 786 (10th Cir. 1975) (divided panel holding gross deferred and uncollected life insurance premiums, including the loading portion, not includible in either *assets* under § 805(b)(4) or *income* under § 809(c)(1)). A policyholder may at any time refuse to pay premiums and allow his policy to lapse. Nevertheless, such premiums must be reported as a component of current income, employing the fictitious "assumption" that all premiums will have been received by the end of the current tax year—even premiums not yet due and not certain to be paid.

tion in respect of assuming liabilities under contracts not listed by the taxpayer) *on insurance and annuity contracts* (including contracts supplementary thereto); less return premiums, and premiums and other consideration arising out of reinsurance ceded. Except in the case of amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded, amounts returned where the amount is not fixed in the contract but depends on the experience of the company or the discretion of the management shall not be included in return premiums. (Emphasis added.)

Treas.Reg. § 1.809–4 (1963) states in relevant part as follows:

§ 1.809–4 *Gross Amount*

(a) *Items taken into account. For purposes of determining gain or loss from operations* under section 809(b)(1) and (2) *[the*

This accounting method based upon a fictitious assumption, though violative of traditional principles of accrual accounting, is mandated by the Code, the NAIC and state insurance regulation authorities and is not questioned by the Commissioner. Yet the Commissioner will not allow the taxpayer to employ the same assumption on the other side of the ledger. The rigors of the fiction are offset to a considerable extent by a balancing entry on the debit side in the amount of the net valuation portion of the premium, which totals about 74 percent. However, the "loading" portion of the premium, which includes agents' commissions, remains unaccrued under the Commissioner's accounting procedure because of the general maxim that "loading" is not deductible on an accrual basis.

The Tax Court held that taxpayer is entitled to benefit from the same assumption for purposes of calculating corresponding items of expense as benefits the government by inflating income. Since the taxpayer recognizes that receipt of premiums gives rise to a simultaneous liability for payment of commissions, it is entitled to assume that commissions will be paid on all the premiums that it must fictitiously report as received, and to simultaneously deduct such commission expense in calculating its taxable income. As the Tax Court stated:

*following items] * * * shall be taken into account. * * ***

(1) *Premiums.* (i) *The gross amount of all premiums and other consideration on insurance and annuity contracts* (including contracts supplementary thereto) * * *. *The term "gross amount of all premiums" means the premiums and other consideration provided in the insurance or annuity contract.* Thus, the amount to be taken into account shall be the total of the premiums and other consideration provided * * * without any deduction * * *. *Such term includes advance premiums, premiums deferred and uncollected* and premiums due and unpaid, deposits, fees, assessments and consideration in respect of assuming liabilities under contracts not issued by the taxpayer (such as payment or transfer of property in an assumption reinsurance transaction * * * ). (Emphasis added.)

Once the fiction of annual receipt of premiums is accepted, it must be applied for all purposes. Upon receipt of premiums, it is clear that a liability to pay commissions arises. Assumption of receipt of premiums necessarily requires recognition of the concomitant liabilities, for the petitioner cannot receive premiums without incurring corresponding commission expenses. *Both the accrual of income and deduction of commissions are subject to the same contingency, that is, the receipt of the premiums. Respondent [the Commissioner] cannot ignore the contingency in requiring accrual of income yet assert such contingency in determining the accrual of related deductions.* (Emphasis added.)

63 T.C. at 373.

This view is supported by the decision of the Fifth Circuit in *Great Commonwealth Life Insurance Co. v. United States, supra,* and the more recent decision of the Seventh Circuit in *Federal Life Insurance Co. v. United States,* 527 F.2d 1096 (7th Cir. 1975), decided since the Tax Court's opinion in the instant case was filed.

Despite the rulings in *Great Commonwealth, supra,* and *Federal Life, supra,* and by the Tax Court in this case, the Commissioner still insists that taxpayer's estimated expense for agents' commissions attributable to deferred premiums does not meet the all-events test of accruability and, since there is no statutory authority for accruing such expenses, the agents' commission expense deduction here was taken prematurely. Further, even though disallowing the premature deduction may result in some distortion of income to taxpayer's detriment, the distortion is not so great as to be unreasonable in light of the other unique accounting principles employed in the life insurance industry. Admittedly, and as Congress and others have recognized, it is difficult, if not impossible, to accurately annualize the income of a life insurance company since it is primarily dealing in long-term contracts. There are so many variable contingencies, such as inaccuracy of mortality tables, fluctuation of interest rates, and vacillation of earnings, gains and losses on reserve assets, together with a myriad of administrative problems that can occur during the life of an insurance contract.

Concededly, the issue is difficult because of the nature of the life insurance business, the long-term contracts involved, and the accounting practices that have evolved and are recognized as proper in the life insurance industry. The difficulty commences with the fiction that gross annual premiums are accrued as though paid on the anniversary date even though much of the premium is deferred and unreceived and is not even legally collectible by the insurance company. It would be simpler merely to refrain from accruing any portion of deferred premiums in income, along with any attributable expenses and charges, as was authorized by the Tenth Circuit in *Standard Life and Accident Insurance Co. v. Commissioner of Internal Revenue, supra.* However, we believe congressional authorization would be required to do so.

Thus, having accepted the fiction that deferred and unreceived premiums are fully received at the start of the policy year—a fiction offset to a considerable extent by accruing the liability of the net valuation reserve—the commission expense, which is certainly part of the legitimate cost of securing the deferred premiums, should be accorded like treatment unless there is a legal or statutory bar to doing so. Once the contingency of premium collectibility is ignored on the income side of the transaction, that same contingency should be ignored for purposes of deducting directly related expenses such as agents' commissions.

We are of the view that the courts in *Franklin Life, supra,* and in *Western & Southern, supra,* did not reach the precise issue of the accrual deduction of agents' commissions on deferred premiums—though the courts have stated generally that "loading" is not accruably deductible—and we feel that the proper result was reached in *Federal Life, supra,* and *Great Commonwealth, supra.* Once a taxpayer accrues all gross income that has been de-

ferred, consistency would mandate that other directly related cost items that can be determined with reasonable accuracy should also be accrued on the other side of the ledger. Although this calls for a modification of the basic rule of accruability on the grounds of both symmetry and accuracy, as well as fairness, we think the recognized accounting practices of the life insurance industry mandate such a result and that the all-events test urged by the Commissioner is inapplicable in this unique situation.

We do not think that the Commissioner's arguments relating to the "favored tax treatment" of life insurance companies, which favored treatment is denied by the taxpayer, are in any event relevant to this issue. Both the accounting and the laws of taxation applicable to life insurance companies are involved and complex. The three-phase scheme of taxation of life insurance companies has been mandated by Congress and rests upon legislative decisions dealing with what has become a basic industry in our economy, affording financial protection to many of our citizens and institutions. The net income received by life insurance companies is eventually taxed, although just when the income is received is difficult to annualize on their long-term operations. We think the courts, in giving consideration to the peculiar problems confronting both the insurance companies and the taxing authorities, have given in-depth consideration to these problems and have reached a fair, accurate and legally permissible conclusion.

■ An additional consideration supports our decision. This court has long taken the position that uniformity of decision among the circuits is vitally important on issues concerning the administration of the tax laws. *Goodenow v. Commissioner of Internal Revenue,* 238 F.2d 20, 22 (8th Cir. 1956);

*Birmingham v. Greer,* 185 F.2d 82, 85 (8th Cir. 1950), *cert. denied,* 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686 (1951). Thus, decisions of other courts of appeals in the area of taxation should be followed unless they are demonstrably erroneous or there appear cogent reasons for rejecting them. *Commissioner of Internal Revenue v. Moran,* 236 F.2d 595, 596 (8th Cir. 1956); *Grain Belt Supply Co. v. Commissioner of Internal Revenue,* 109 F.2d 490 (8th Cir.), *cert. denied,* 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414 (1940). On the instant issue both the Seventh and Fifth Circuits have ruled in favor of the taxpayer, permitting accrual and deduction of commissions attributable to deferred premiums in the prior year. *Federal Life, supra; Great Commonwealth, supra.* The facts before the courts in both cases were substantially similar to those before us now and both decisions appear to be soundly reasoned. Thus, as there appear no cogent reasons for not following them and no other courts of appeals have rendered contrary decisions, we follow them to the extent they are dispositive of the issue before us.

There is involved here an additional factor that was not discussed in the *Great Commonwealth* and *Federal Life* cases. The commission arrangement used by taxpayer and throughout the life insurance industry differentiates between commissions payable on first-year or *new* business and on *renewal* business.[5] Rights to commissions earned on *new* business by taxpayer's field underwriters are immediately vested. Thus, as soon as the agent obtains the customer's signature on the policy he has earned his commission and will receive it provided the premium is ultimately paid by the insured when later due—even if the agent's employment with taxpayer is termi-

5. The agents' commissions at issue here are paid to taxpayer's field underwriters and office managers on a plan varying with the age of the policy. On an ordinary life policy, the first-year commission paid a field underwriter is 60 percent of the first-year premium. This commission only is immediately vested. Thereafter, only as long as he continues his employment with taxpayer, the underwriter receives 15 percent of the second year's premium, 10 percent of the third and fourth years' premiums and, following the fourth year, a "service commission" of 2½ percent of premiums received. Field underwriters can also qualify to receive additional "high performance bonuses," and an office manager, in addition to his own commissions as an underwriter, receives a commission computed as 20 percent of all the commissions and bonuses paid to the underwriters in his office.

nated before the premium is ultimately paid. However, to receive commissions on renewal premiums, the agent must still be employed by the taxpayer at the time the premiums are paid.

Thus, the taxpayer's liability to its agents for commissions on *renewal* premiums is subject to the additional contingency that the agents will still be employed by taxpayer at the time the premiums are received and the commissions become payable. This additional contingency somewhat clouds the accounting picture and confuses the inviting symmetry of the Tax Court's holding. The Commissioner contends that even if we accept the proposition that similar accounting assumptions are to be employed in calculating commission expense deductions as those used in calculating income, this added contingency should deprive the taxpayer of the portion of its "premature" deduction predicated upon estimated commission expenses attributable to deferred *renewal* premiums. The Commissioner's argument is premised once again upon the contention that deferred premium commission expenses are not properly accruable and that traditional accounting practices governing accruability cannot be disregarded absent specific congressional authorization to do so.[6]

The Tax Court found as a matter of fact that taxpayer was able to ascertain its lia-

bility for commissions on deferred premiums with reasonable accuracy by predicting, based upon past experience, the amount of deferred premiums it would fail to receive in the following year. Specifically, the court found that "[a]pproximately 90 percent of [taxpayer's] claimed accrued commissions on gross deferred premiums in its 1960 to 1963, inclusive, income tax returns were paid in the following year." 63 T.C. at 367.

Though the single contingency that deferred renewal premiums will be *received* does not precisely match the double contingencies that commissions attributable to them will be *paid,* we believe the need for consistency on both sides of the ledger nonetheless dictates that taxpayer be entitled to deduct its projected commission expense on deferred *renewal* premiums as it may on deferred *new* business premiums. The Commissioner cannot reasonably or logically contend that Congress intended to disregard traditional accrual principles in requiring deferred premiums to be included in taxpayer's income while also contending that adherence to such principles is required to deny taxpayer a deduction for commission expenses directly tied to the same income. The nonspecific language governing taxpayer's deductions from income does not support such a strained construction,[7] and the language of § 461(a) of the Code specifi-

---

**6.** Citing *Schlude v. Commissioner of Internal Revenue,* 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963); *American Automobile Ass'n v. United States,* 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961); and *Automobile Club v. Commissioner of Internal Revenue,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

**7.** Section 809(d)(12) of the Code only implicitly incorporates the general language of § 162(a), that in turn grants a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business * * *."

In view of the general nature of this statutory language authorizing the deduction for commission expenses, compared with the more specific language requiring inclusion of deferred premiums in income, we believe the maxim that related items of income and expense should not be matched at the expense of established rules of accounting cannot be invoked by the Commissioner to block the in-

stant deductions. The majority of circuits that have considered the question have held that § 809(c)(1) of the Code requires inclusion of deferred premiums in income, but have recognized as well that the assumption that the annual premium has been received in full at the end of the prior tax year (but before the end of the applicable policy year) is a fiction. *See, e. g., Franklin Life Ins. Co. v. United States, supra* at 760–61. We believe this rule also requires, in view of the general policy favoring consistency in tax accounting, *see* § 461(a), that taxpayer be permitted to deduct commission expenses on deferred premiums in the prior year and that we do not need any more specific congressional directive to allow taxpayer to claim the deduction. The *Schlude, American Automobile Ass'n* and *Automobile Club* cases, *supra* note 6, relied upon by the Commissioner, are inapposite. None concerns the unique life insurance taxation scheme at issue here.

cally contradicts the Commissioner's position:

> § 461.   *General rule for taxable year of deduction.*
>
> (a) *General rule.*
>
> The amount of any deduction or credit allowed by this subtitle [governing income taxes] shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

Moreover, the Tax Court's finding on the factual component of this issue is not clearly erroneous.  *Palmer v. Commissioner of Internal Revenue,* 523 F.2d 1308 (8th Cir. 1975);  Fed.R.Civ.P. 52(a).

In conclusion we agree with the comments of the Fifth Circuit:

> The result we reach is admittedly an imperfect one.  None of the amounts under discussion are properly accruable under normal accounting practices.   It would be far more accurate, we think, for the company to disregard deferred  *  * premiums for all tax purposes, with the Commissioner's approval, of course.  This would create some variance in accounting between the N.A.I.C. reports and the tax returns, but it is well settled that there is no necessary agreement between the two  *  *  *.  We hold only that, once the company accrues the net valuation portion of the deferred  *  *  * premiums, it must accrue the gross amount of those premiums for all tax purposes, and that it is also entitled to accrue commissions payable on those premiums.

*Great Commonwealth Life Insurance Co. v. United States, supra* at 116.   (Citations omitted.)

Moreover, since in the view of a large majority of the circuits, the peculiar rule governing calculation of income is embodied in § 809(c)(1) of the Code itself, not merely in the Commissioner's regulations, any desired change is properly for Congress, not the courts, to make.

The judgment of the Tax Court is affirmed.